In the Matter of DERRICO CONSTRUCTION CORP., Debtor.

DERRICO CONSTRUCTION CORP., Plaintiff,

v.

LOXAHATCHEE RIVER ENVIRONMENTAL CONTROL DISTRICT, Defendant.

Bankruptcy No. 78–672 Orl P.

United States Bankruptcy Court, M. D. Florida, Orlando Division.

March 19, 1981.

D. A. Nohrr, Nohrr, Nohrr, Brushwood & Howie, P.A., Melbourne, Fla., for plaintiff.

W. J. Hunston, Jr., DeSantis, Cook, Meehan, Cohen, Gaskill & Silberman, P.A., North Palm Beach, Fla., Michael G. Williamson, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is an adversary proceeding initiated by Derrico Construction Corp. (Derrico), the Debtor involved in the above-captioned arrangement proceeding. Derrico seeks a determination that certain claims made by the Defendant, Loxahatchee River Environmental Control District (District) are dischargeable; therefore, the District is barred from seeking a recovery from Derrico by virtue of the Order of Confirmation which under § 371 operates as a discharge of all dischargeable debts of a Debtor. The District in opposition of a claim of dischargeability claims first that since the District was not listed as a creditor, did not receive notice of the proceeding in time for a meaningful participation in the proceeding, its claim against Derrico would not be dischargeable by virtue of § 17(a)(3) of the Act. In addition, it is the contention of the District that at the time the Chapter XI proceeding was commenced, its contract with Derrico was still in the executory stage, it was still in the process of being performed was not in default and, therefore, there was no provable debt in existence on the date of the commencement of the case, therefore, its claim against Derrico cannot be affected by the arrangement proceeding and the order of confirmation would not operate as a discharge of this debt.

The facts germane and relevant to this controversy, as they appear from the record, can be summarized as follows:

On October 13, 1978, Derrico filed its petition for relief under Chapter XI of the Bankruptcy Act. At the time it filed its schedules, Derrico did not list the District as a creditor. In addition, the District never filed any proof of claim in the proceeding, nor did it participate in any manner in the plan of arrangement which was subsequently confirmed by this Court.

There is no question, however, that the District did in fact receive actual notice on October 18, 1978 of the filing of the Chapter XI proceeding. On that date, Derrico's surety, The Travelers Indemnity Company, through its attorneys, sent a letter to the District advising it that Derrico had filed a Chapter XI proceeding and requested that the District not disburse any construction funds to Derrico until such time as the surety could determine the effect of the Chapter XI filing upon Derrico's ability to perform its contract with the District.

■ It is this Court's opinion that notice, from whatever source, is sufficient to meet the requirements of § 17(a)(3). Under § 17(a)(3), a debt is not dischargeable if it was not scheduled in time for proof and allowance, unless the creditor had "notice or actual knowledge" of the proceeding. The Court finds that the District did have actual knowledge of the pendency of the arrangement, accordingly, the order of confirmation would have released Derrico from any debt owed to the District, if the debt was a provable debt, on date of the filing of the petition. This leads to the ultimate question which is the provability, vel non, of a debt if any owed by Derrico to the District.

The factual background of the relationship of the parties as it appears from the record can be summarized as follows:

On May 13, 1977, Derrico and the District entered into a construction contract. Under the terms of this contract, Derrico was to construct approximately 3.6 miles of iron forced main pipeline for the District. The pipeline was designed to carry sewage effluent from the District's sewage and waste water treatment facility to the District's off-site discharge pond. The contract provided for completion date of 210 days from the Notice to Proceed. The notice was issued on June 1, 1977 by the District. Derrico promptly commenced construction of the pipeline.

It is without dispute that leaks existed from the very beginning in the pipeline installed by Derrico. As of the date of the filing of the Chapter XI petition the District had not, however, called a default on the project. Nor did Derrico at the time of the filing of its petition consider the District its creditor as evidenced by the fact that it did not list the District as one of its creditors in the Schedule of Liabilities filed in this case. To the contrary, the parties to the contract continued negotiating for a substantial period of time following the filing of the petition attempting to arrive at a completion of the contract to the satisfaction of both parties. It is without doubt that the contract was not considered finished by either party until the testing and corrective work was completed. It was the District's position throughout that it would not accept the project until the project was completed in accordance with the terms of the contract.

Under the terms of the contract, the one year warranty period was to commence from the date of the District's final acceptance of the pipeline. Prior to such final acceptance, absent a declaration of default, under Article 19 of the contract, the contractor was required to remove and replace all materials and work not accepted by the owner on the ground that it failed to conform to the contract. In addition, under the general conditions set forth in Article 25, the fact that the owner took possession and used part of the completed or partially completed portions of the pipeline, did not constitute an acceptance of the work performed by Derrico. The fact that the physical installation of the pipeline was completed did not conclude and terminate the respective responsibilities of the parties. It is clear from the contract documents as well as from the testimony produced at the trial that the completion of the actual installation would fulfill only the initial phase of the contract and the completion of the actual work was not finished until the testing phase would be completed and the project is accepted by the District.

During the testing, the nature and extent of the leaks became obvious. Based upon this, the District refused to accept the work. While refusing to accept the work, in reliance on the continued assurances of Derrico that steps will be taken to complete the

project and the corrective work, the District did not call a default, but rather gave Derrico additional time to complete the performance by curing the defects.

These continued attempts to complete the contract continued on at least until March of 1979 when a meeting was held between Derrico and the District. The purpose of the meeting was to see if some agreement could be reached as to a manner of correcting the problems revealed by the testing of the pipeline.

It was Derrico's position at that meeting that the mere repair of the 16 leaks would constitute "substantial performance" under the contract, therefore, Derrico was entitled to its final payment under the contract and the warranty period commenced to run if the corrective work was done. It was the District's position at that meeting that it contracted for "new" pipeline and that the proposed method of repairing the leaks, that is, placing clamps on them, would not result in completion of the contract in accordance with its terms and the one year warranty period did not commence to run until the project was *completed*.

While the March 1979 meeting ended in an impasse, Derrico's representatives continued to attempt to repair and replace the defective portion of the pipeline thereafter. However, the leaks in the pipeline continued to reoccur all through April 1980 at which time telegrams demanding immediate corrective work were sent to Derrico by the District. These telegrams directed Derrico to perform certain emergency repairs by filling holes occurring along the length of the pipeline and invoiced the costs of these repairs to Derrico.

All of Derrico's attempts to complete performance of the contract were unsuccessful. In June of 1980, the District declared the contract in default and instituted suit against Derrico, Derrico's surety and Derrico's materialman, in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

Based upon the foregoing facts, this Court is satisfied that the contention of the Debtor is without merit for the following reasons:

■ Chapter XI was designed to enable debtors to continue in their businesses under court supervision. Accordingly, the rules governing executory contracts facilitate the statutory design by assuming the continued vitality of executory contracts in the absence of an unambiguous rejection. Under Chapter XI there is no such thing as a tacit rejection. See, *In re Greenpoint Metallic Bed Co.*, 113 F.2d 881, 884 (2d Cir. 1940). Rather, executory contracts and the debtor's obligations under an executory contract are not discharged by Chapter XI arrangement plan and remain in effect unless the debtor affirmatively rejects them. *Federal's Inc. v. Edmonton Investment Company*, 404 F.Supp. 68 (E.D.Mich.1975), aff'd 555 F.2d 577 (6th Cir. 1977); *Smith v. Hill*, 317 F.2d 539 (9th Cir. 1963). A party to an executory contract with a debtor "has no provable claim while the contract is executory." The claim arises only upon rejection. *Federal's Inc. v. Edmonton Investment Company, supra; U. S. Metal Products Company v. United States*, 302 F.Supp. 1263, 1267–68 (E.D.N.Y.1969). A contract is still "executory" so long as by the terms of the contract remains that something to be done before the contract is fully performed. *Federal's Inc. v. Edmonton Investment Co., supra; Farringon v. Tennessee*, 95 U.S. 679, 683, 24 L.Ed. 558 (1877).

■ In the instant case, the Debtor took no action to reject this contract, but rather continued to attempt to complete performance and there is no question that the parties did not consider the contract completed at the time the arrangement proceeding was instituted.

The most that can be said is that Derrico demonstrated nothing more than an excused failure to perform as of the date of the filing of the petition. The difficulty with Derrico's contention is its failure to distinguish between an unexcused failure to perform under a contract whereby both parties thereafter treat the agreement as dead, and an excused failure to perform under a contract within specified time lim-

its which are waived by the injured party, whereby both parties thereafter treat the agreement as alive and in full force and effect. The first case is a default which gives rise to a provable claim in bankruptcy; the second case is an excused default which does not give rise to a provable claim in bankruptcy. *U. S. Metal Products Company v. United States, supra.*

As noted earlier, at no time prior to filing of the Chapter XI petition did the District declare a default. Further, at no time prior to the filing of the petition did Derrico refuse to complete performance as called for under the Contract. In light of the District's refusal to accept the project as complete, it is clear that Derrico continued to attempt to perform for many months thereafter.

One more comment. While this contract had a date of completion fixed by the contract and the contract called for a penalty as liquidated damages for the delay in performance, failure to perform on time, per se, did not constitute a default especially when the other party waived the failure of the contractor to perform on time and extended the time of performance upon the expectation of ultimately receiving a completion of the contract. *U. S. Metal Products Company v. United States, supra;* 5 *Williston on Contracts,* § 704 (3d ed. 1961); 6 *Williston on Contracts,* § 856 (3d ed. 1962). The injured party, under such circumstances, has an election to declare a default or to accommodate the defaulting contractor by extending the time of performance, expressly or impliedly.

Based on the foregoing, the Court is satisfied that as of the date of the filing of the Chapter XI petition by Derrico, this contract was still executory, still in the process of being performed, and as such, since Derrico never expressly rejected this executory contract either in its plan of arrangement or pursuant to an application filed, pursuant to § 311 of the Act, the District did not have a provable claim as of that date. From all this it follows that the debt, if any owed by Derrico, is unaffected by the Order of Confirmation.

A separate final judgment will be entered in accordance with the foregoing.