**In re William L. SLAIBY, Debtor.**

**William L. SLAIBY, Plaintiff,**

v.

**William RASSMAN and Marie Rassman, Defendants.**

**Bankruptcy No. 81–168.
Adv. No. 84–88.**

United States Bankruptcy Court,
D. New Hampshire.

June 19, 1985.

Daniel W. Sklar, Manchester, N.H., for William L. Slaiby.

Michael Ransmeier, Moulton, Smith Law Offices, Littleton, N.H., for the Rassmans.

## ORDER GRANTING
## SUMMARY JUDGMENT

JAMES E. YACOS, Bankruptcy Judge.

This adversary proceeding was commenced by the plaintiff debtor's complaint requesting an injunction and other relief under 11 U.S.C. § 524 to protect himself from a state court lawsuit commenced by the defendant creditors to collect on a pre-bankruptcy judgment debt which the defendants contend was not discharged by these bankruptcy proceedings.

Responsive pleadings were filed by the defendants and extensive. discovery was taken by both the plaintiff and the defendants in this cause.

A voluminous "Motion for Summary Judgment by Plaintiff" was filed by the plaintiff debtor on December 27, 1984. An equally voluminous "Objection to plaintiff's Motion for Summary Judgment" filed on January 10, 1985 and a "Defendant's Supplement to Objection to Motion for Summary Judgment" filed on January 22, 1985 were filed by the defendants. Oral argument was heard on the summary judgment motion on January 23, 1985 and the court has subsequently reviewed the deposition extracts and other pleadings submitted in support and in opposition to the motion for summary judgment. The matter accordingly is ripe for decision.

## FINDINGS OF FACT

The following facts are established beyond dispute by the pleadings, affidavits, and depositions which constitute the record for the determination of the pending motion for summary judgment:

(a) Prior to 1977 the Rassmans had loaned money to Slaiby and his daughter with regard to a bar operation conducted by the Slaibys in Barton, Vermont.

(b) During the summer of 1977 the bar operation was floundering and the Slaibys closed it down and sold and auctioned off all of the bar equipment and furnishings. The debt to the Rassmans remained unpaid.

(c) On September 27, 1977 the Rassmans filed suit against the Slaibys in the Vermont court. The Slaibys were served but never appeared in the Vermont proceedings, having moved shortly thereafter out of Vermont.

(d) The Rassmans' regular attorney in Vermont was Robert Gensburg but he had an ethical problem and conflict in representing the Rassmans in seeking recovery on the debt from the Slaibys. Accordingly, Gensburg arranged to have the suit filed and handled by Attorney Robert Chimileski of Newport, Vermont.

(e) On July 24, 1980 Chimileski obtained a default judgment in the Vermont court against the Slaibys in a total amount of $53,843.44, which was based upon the Rassmans' deficiency claim after foreclosure upon the real property in which the bar operation had been conducted. There were no allegations in the pleadings in the Vermont action alleging any grounds of willful or malicious injury to property which would have supported an objection to discharge of the debt in any subsequent bankruptcy proceeding.

(f) Although Gensburg arranged to have the Vermont lawsuit handled by Chimileski, the record indicates that Gensburg continued to aid Chimileski in the preparation of documents and pleadings necessary for the Vermont lawsuit.

(g) On August 12, 1980, Chimileski sent Gensburg a copy of the default judgment, noting in his transmittal letter that Gensburg should obtain a certified copy of the judgment "if you intend to commence a suit on the judgment in any other jurisdiction but I will leave that to your discretion." Chimileski then closed the letter stating "thanks for referring this matter to us. If you need any additional assistance in connection with the matter please feel free to call at any time."

(h) On September 15, 1980 Chimileski moved from his former law office located at 22 Third Street, Newport, Vermont, and joined with several other lawyers in another law firm in Newport.

(i) The Rassmans and their attorneys did not know the whereabouts of the Slaibys from 1978 to 1980 and made no attempt to execute upon the default judgment during that period. The Rassmans and Gensburg had frequent telephone conversations during this period since Gensburg represented them on a number of legal and real property matters in Vermont. In each such conversation the Rassmans would ask whether Slaiby had been located yet.

(j) On March 27, 1981 William Slaiby filed a Chapter 7 bankruptcy petition in this court. Prior to filing the petition, Slaiby consulted in late 1980 with attorney R. Brian Snow who advised him to prepare a complete list of all his creditors with their names and addresses. Slaiby did so and provided Snow with a list of some 95 creditors for inclusion in the bankruptcy schedules.

(k) With regard to the Rassmans, Slaiby learned that the Rassmans had left Vermont. After advising Snow of this fact, he was told to contact the court in Vermont from which he had received the original complaint on the Rassmans' lawsuit. He learned from that court in December of 1980 that a default judgment had been entered against him in July of 1980. He knew that Chimileski was the Rassmans' attorney when the lawsuit was filed in 1977 and the court confirmed that Chimileski was still the attorney of record for the

Rassmans at the time the default judgment was obtained in July of 1980.

(*l*) After being advised of the foregoing, Snow prepared the bankruptcy schedules, which included a listing for the Rassmans as follows:

William & Marie Rassman
C/O Attorney Robert Chimileski
22 Third Street
Newport, Vermont 05855

(m) The record indicates that notice of the bankruptcy was mailed to the Rassmans as indicated above in April of 1980 and that the envelope containing the notice was not returned as undeliverable by the Post Office. The bankruptcy court records indicate that out of the 95 creditors listed the notices to three creditors were returned as undeliverable.

(n) Attorneys Gensburg and Chimileski together with the Rassmans all state in their depositions that they don't recall ever having received the notice.

(o) During the course of the bankruptcy proceedings, another creditor, through its attorney Mark Gearreald, obtained extension orders from the bankruptcy court extending the deadline for filing objections to the discharge of William Slaiby until October 15, 1981.

(p) On September 30, 1981 Attorney Gearreald wrote to Chimileski, using the 22 Third Street address in Newport, Vermont, inquiring about the nature and amount of the Rassmans' claim. This letter was received by Chimileski at his new address on October 2, 1981. The Gearreald letter included the following recitation:

"For your information, my client, who is owed $35,000 by Mr. Slaiby, is contemplating filing an objection to having Mr. Slaiby discharged on grounds that he has failed to adequately explain his loss of assets. If in fact Mr. Slaiby still owes a substantial sum to you, perhaps you would be interested in joining in any possible action I may take in Mr. Gurberg's behalf to that end. If so, please do not hesitate to get back to me with your desires in this regard as I must make my intentions known to the Court by October 15, 1981. The cost to you in this effort would not be substantial provided other creditors are similarly interested, and it may be possible to induce Mr. Slaiby to enter a Chapter 13 petition in lieu of his Chapter 7 petition so that at least part of the outstanding debts to you that remain after the foreclosure of the property may be recouped by you. Please do not hesitate to contact me if you have any questions."

(q) Chimileski did not respond to Gearreald's letter when it was received. On November 16, 1981 Chimileski transmitted the Gearreald letter to Gensburg with the following transmittal letter

"Enclosed herewith please find copy of letter I received on October 2, 1981 from Attorney Mark Gearreald regarding Dr. & Mrs. Rassman. Do you wish me to respond to this letter? If so, please call."

(r) Chimileski and Gensburg had a telephone conference regarding the Gearreald letter and decided that neither would respond.

(s) The Gearreald letter incorrectly listed the date of filing of the Slaiby bankruptcy as March 6, *1980* instead of the correct March 6, *1981* filing date. However, neither Gensburg nor Chimileski noted or considered the purported 1980 filing date as being significant at the time of their first discussion of the Gearreald letter.

(t) Chimileski and Gensburg did have some discussion subsequently regarding the fact that the "90 day claims deadline" that they mistakenly understood to apply in all bankruptcy proceedings had expired and therefore they could not file a claim for the Rassmans in the Slaiby bankruptcy. In fact, there was no "90-day claims deadline" (nor *any* claims deadline) in the Slaiby case since it was a no-asset case. There was no discussion by Chimileski and Gearreald about any possible objection to the discharge of the Rassmans' debt in the Slaiby bankruptcy, notwithstanding the fact that Gearreald indicated that the time for objecting to discharge was still open.

(u) On April 21, 1982 Gearreald again wrote to Chimileski asking for information regarding the Rassmans' claim. On May 5, 1982 Chimileski sent a copy of the Gearreald letter to Gensburg. Chimileski called Gensburg and "asked him if he wanted me to respond to the Gearreald letter." Thereafter, on May 18, 1982 Chimileski did send a letter to Gearreald, acting on behalf of the Rassmans, confirming that the amount scheduled in the Slaiby bankruptcy was the proper amount of the Rassmans' debt.

(v) Chimileski testified that he "closed his file" on the Rassman matter in December of 1980.

(w) Chimileski testified that had he received a bankruptcy notice he would have sent the notice to Gensburg, even though his file was "closed".

(x) Chimileski billed the Rassmans directly for his services and knew their Hawaii address. There is no evidence in the record that the Rassmans ever expressly terminated Chimileski's authority to represent them.

(y) On September 9, 1984, this court finally entered an order of discharge regarding William Slaiby in these proceedings. The delay in entering the discharge was due to the activity of attorney Gearreald on behalf of another creditor.

(z) On September 20, 1984 the Rassmans caused a lawsuit to be filed in New Hampshire against William Slaiby regarding their 1980 default judgment.

## CONCLUSIONS OF LAW

It is clear that the Rassmans' judgment debt would be discharged by the Slaiby bankruptcy if as a matter of law the notice sent by the clerks of this court in April of 1981 to attorney Chimileski was legally sufficient to bind the Rassmans. *Bankruptcy Code* §§ 524 and 727. The deposition testimony of Chimileski that he doesn't recall whether he received the notice raises a factual issue however as to whether the presumption that an item mailed was received has been rebutted. Cf. *In re Worthing,* 24 B.R. 774, 777 (D.Conn.1982). Since that determination raises questions of credibility or weight of the testimony, the court can not dispose of that issue on a summary judgment basis and must assume for present purposes that notice was not received.

This brings into play Section 523(a)(3) of the Bankruptcy Code, which provides for nondischargeability of debts unless the creditor has actual notice of the proceedings:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

\*    \*    \*    \*    \*    \*

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

There is no question in the present case that Chimileski had actual notice of the Slaiby bankruptcy on October 2, 1981 by virtue of the Gearreald letter. This was before the October 15th deadline for objecting to dischargeability of debts and, as indicated above, before any deadline for filing a proof of claim.

The defendants contend that this actual notice was insufficient to bind them on the grounds that Chimileski was not then their attorney. However the evidence is uncontroverted that Chimileski both before and after October 1981 acted on behalf of the Rassmans, continued to act on their behalf,

and held himself out as being ready to act further as requested. There is no evidence that his authority to act was terminated. There is also no indication that Gensburg's ethical conflict no longer precluded Gensburg from acting for the Rassmans in this matter.

The unilateral "closing of his file" by Chimileski did not serve to terminate his relationship with his clients, absent an agreement to that effect with the clients, and in any event is belied as a termination of authority by his subsequent actions on their behalf.

The Rassmans had legally effective notice of the bankruptcy through the actual knowledge of their attorney and accordingly had their judgment debt discharged when they failed to take any action to assert any objection from October 2, 1981 to September 9, 1984 when this court entered an order of discharge. This situation fits precisely within the letter and meaning of § 523(a)(3) of the Code. See *Matter of Derrico Constr. Corp.* 10 B.R. 553, 555 (M.D.Fla.1981) (actual notice "from whatever source" effective); *In re Davis*, 19 B.R. 487 (S.D.Fla.1982) (oral notice sufficient).

The citation of numerous cases by the defendants to the effect that notice to an attorney rather than the creditor is insufficient is not material. Examination of those decisions reveals that they are based upon express findings that the attorney in question no longer had any authority to act for the creditor at the time notice was received. The great weight of modern authority is to the effect that notice of bankruptcy to a creditor's attorney is sufficient to bind the creditor if it is received while the attorney is still representing his client. See 3 *Collier on Bankruptcy*, 15th Ed., § 523.-13[5](c), p. 523–97 (1985); *In re Saltzmann*, 25 B.R. 125, 8 CBC 2d 9 (E.D.Wisc. 1982); *Maldonado v. Ramirez*, 37 B.R. 219, 10 CBC 2d 664 (Virgin Islands 1984).

Likewise, the contentions of the defendants based upon factual issues as to whether Slaiby expended reasonable efforts to learn their new Hawaii address are legally irrelevant here in view of finding and conclusion that actual notice of the bankruptcy *was* received by their attorney.[1]

Even if the court were to assume that Chimileski was not authorized to represent the Rassmans on October 2, 1981, when he received actual notice, the result would still be the same. There is no question that at least by November of 1981 attorney Gensburg had the actual notice. Gensburg represented the Rassmans generally at that time and in fact had expended considerable efforts on their behalf in trying to locate the Slaibys in various parts of the United States.[2]

In November of 1981, or at any time to date, Gensburg still could have filed a proof of claim in the Slaiby bankruptcy. As for objections to discharge, the court-ordered deadline had expired on October 15, 1981, but Bankruptcy Rule 409(a)(2) then in effect provided discretion in the court to extend the time for filing objections:

> (2) The court shall make an order fixing a time for the filing of a complaint to determine the dischargeability of any debt.... The court may for cause, on its own initiative or on application of any party in interest, extend the time fixed under this paragraph.

See also *Bankruptcy Rules*, Rule 404(c). There is little doubt that such an extension

---

1. The question of reasonable effort *would* be material if the court were relying on the arguable proposition that a notice to a creditor properly listed but "lost in the mails" will still bind the creditor on grounds that service is effective upon mailing, i.e., the debtor does not guarantee delivery in the mails. The court does not reach that issue here.

2. Both *Gensburg* and the *Rassmans* indicate that they do not believe that Gensburg advised the Rassmans of Slaiby's New Hampshire bankruptcy filing when Gensburg learned of it in November of 1981. While it appears incredible that Slaiby's whereabouts would not be immediately reported to the Rassmans, in view of their constant inquiries to Gensburg as to any success in locating Slaiby, this question raises a factual issue not appropriate to determine on a summary judgment basis. It is in any event unnecessary to the decision here reached on other grounds.

would have been granted if requested ·at that time on a showing of lack of receipt of prior notice of the bankruptcy. Cf. *In re Young,* 33 B.R. 533, 534 (dicta) (N.D.Ohio 1983).

## RULING

It is recognized that granting summary judgment for the debtor may appear harsh, inasmuch as the court is assuming for present purposes that the Rassmans themselves had no actual knowledge of the Slaiby bankruptcy in 1981. Moreover, it is apparent that neither Chimileski or Gensburg are bankruptcy specialists and arguably were not fully conversant with the bankruptcy rules and statute. However, the court must also balance against these considerations the strong "fresh start" policy that underlies the provisions of the bankruptcy laws pertaining to a debtor's right to a prompt determination of the discharge and any objections thereto. See, e.g., *In re Griffin,* 32 B.R. 36 (E.D.Cal. 1983); *In re Morris,* 10 B.R. 448, 4 CBC 2d 332, 335 (N.D.Iowa 1981).

In the present case it is my opinion that if the Rassmans had any "willful or malicious injury" or other grounds to object to the dischargeability of their debt under subparagraphs (2), (4), or (6) of subsection (a) of Code § 523 their attorneys were duty-bound to bring that question before this court for determination in 1981 when they actually learned of these bankruptcy proceedings. *Maldonado v. Ramirez,* supra, 37 B.R. 219, 10 CBC at pp. 666–67. Instead, they did nothing for three years and the Rassmans then sued the debtor immediately after the general order of discharge was entered. I can not believe that permitting such long-delayed litigation to be renewed, in face of actual knowledge of the bankruptcy, would accord with the "fresh start" for debtors intended by Congress. Accordingly, it is hereby

ORDERED that the plaintiff debtor's Motion for Summary Judgment is granted to the extent that the defendants are hereby permanently enjoined from taking any further action to collect their pre-bankruptcy judgment from the plaintiff. The further prayers for relief in the Complaint and Amendment thereto raise material issues of fact that render disposition by summary judgment inappropriate.