In re Beth E. BARNETT, Debtor.

Bankruptcy No. 84 B 10036 (PBA).

United States Bankruptcy Court,
S.D. New York.

Sept. 4, 1984.

Killian & Gephart, Harrisburg, Pa., for Pennsylvania Higher Education Assistance Agency; Jane G. Penny, Harrisburg, Pa., of counsel.

Horwitz & Associates, P.C., New York City, for Beth E. Barnett; Michael L. Moskowitz, New York City, of counsel.

## MEMORANDUM DECISION & ORDER

PRUDENCE B. ABRAM, Bankruptcy Judge:

On January 10, 1983, Beth E. Barnett ("Debtor") filed a petition under Chapter 13 of the Bankruptcy Code. Her schedule of creditors listed thirteen creditors owed a total of $31,054.76. Among the creditors scheduled was the following:

"Peoples Bank of Unity
301 Unity Center Rd.
Pittsburgh, PA 15239
(Re: Pa. Higher Ed Asst Agency)
# 13095, student loan 1982
18,510.00"

This was one of two student loans listed, the other loan being scheduled in the amount of $5,913.00.

Under date of February 15, 1984 notice was sent to all scheduled creditors of the time and place of the § 341 meeting of creditors and the time and place of the confirmation hearing, scheduled for March 22, 1984. In addition to advising of the automatic stay, the notice also stated:

"In order to have his claim allowed so that he may share in any distribution from the estate, a creditor must file a claim, whether or not he is included in the list of creditors filed by the debtor. Claims which are not filed within 90 days after the above date set for the meeting of creditors will not be allowed, except as otherwise provided by law. A claim may be filed in the office of the Bankruptcy Court."

At the time of the filing of her petition, Ms. Barnett proposed a plan providing for payment of $150 per month for 36 months. The plan provided for pro rata distribution to unsecured creditors who filed proofs of claim, a yield to creditors of approximately 14%. As a result of a hearing held by the court on May 24, 1984 to determine the good faith efforts by the Debtor in repaying her Chapter 13 creditors, the Debtor proposed an amended plan on May 31, 1984 for 60 months, for aggregate plan payments of $9,000. The added length of the plan increased the yield to creditors to approximately 26%. On June 6, 1984, the plan was confirmed and the order of confirmation recites that no one appeared on behalf of creditors.

Six timely claims were filed totalling $11,136.24. The Peoples Bank of Unity did not file a proof of claim. A claim was filed with respect to Ms. Barnett's other student loan.

By application dated August 1, 1984, the Pennsylvania Higher Education Assistance Agency ("PHEAA") has sought leave to file a claim, *nunc pro tunc*, based on its guarantee of the Peoples Bank of Unity student loan. The application alleges that PHEAA as guarantor of Ms. Barnett's student loan was entitled to notice of the Chapter 13 proceeding and that PHEAA was not listed as a creditor nor provided with notice of the bankruptcy in time to permit timely filing of a proof of claim. The Debtor has filed an affirmation in opposition to the application alleging that PHEAA was not entitled to notice and that the only entity entitled to notice was The Peoples Bank of Unity. The affirmation further attaches as an exhibit a letter dated July 13, 1984 from PHEAA to counsel to the Debtor stating

"Ms. Barnett has contacted this Agency and informed us that she has filed a Chapter 13 bankruptcy. To date, we have received no verification that this bankruptcy has been filed. Currently, Ms. Barnett's accounts are still with the

original lending institution The Peoples Bank of Unity."

Bankruptcy Code § 521(1)[1] provides:

"The debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, and a statement of the debtor's financial affairs * * * "

In a Chapter 13 cases, this duty of the debtor is to be accomplished by means of the completion and filing of a Chapter 13 Statement conforming to Official Form No. 10. See Bankruptcy Rule 1007(a)(1) and (b).

Official Form No. 10 contains several pertinent provisions. Question 12C requires the listing of all unsecured debts, with complete mailing address, including zip code. The relevant portion of Ms. Barnett's statement is quoted above.

Question 13 is also material.

"13. Codebtors. * * *

a. Are any other persons liable, as cosigners, guarantors, or in any other manner, on any of the debts of either of you or is either of you so liable on the debts of others? [If so, give particulars * * *]

_____

b. If so, have the codebtors made any payments on the debts? * * *

_____

c. Has either of you made any payments on the debts? * * *

_____"

In response to each of Questions 13a, 13b and 13c, Ms. Barnett answered "None." It is apparent from the Debtor's schedules that PHEAA had guaranteed her loan from The Peoples Bank of Unity. The notes attached to PHEAA's memorandum in support of its application also clearly evidence the role of PHEAA as guarantor. Thus, the answers given in response to Question 13 were wrong, as both student loans were made under guarantee programs.

■ This court holds that the Debtor was obligated to schedule as a debt under Question 12c, and list in response to Question 13, the name and address of each guarantor of her student loans to the extent that she had actual knowledge of their existence and of their names and addresses or could have acquired this information after reasonable inquiry.

■ Due process requires no less than actual notice to PHEAA. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court found notice by publication to the beneficiaries of a trust to be insufficient where the beneficiaries were known and had known places of residence.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 314–315.

■ That PHEAA's interests could have been protected by The Peoples Bank of Unity is undeniable.[2] However, it is equally undeniable that the Bank failed to take any action to protect its or PHEAA's interests against the Debtor.[3] PHEAA was entitled to its own direct notice of the proceedings so that it might take what action it wished in the case. Ms. Barnett

---

1. This section is applicable in Chapter 13 cases by virtue of Bankruptcy Code § 107(a).

2. The documents attached to PHEAA's memorandum in support are apparently incomplete as they show Peoples Bank of Unity referring a claim of only $4,978.12 to PHEAA on June 18, 1984. However, any issue as to the proper amount of PHEAA's claim may be raised at another time.

3. Whether PHEAA would have any right of action against the Bank or defense to payment based on the failure to timely file a proof of claim is not germane to the resolution of the motion made by PHEAA.

owed a debt to PHEAA. "Claim" as defined in Code § 101(4) is all encompassing and includes a contingent or unliquidated right to payment. A guarantee is a classic illustration of a contingent claim. See *In re La Bonte*, 13 B.R. 887 (Bkrtcy.D.Kan. 1981). A debt is liability on a claim. Bankruptcy Code § 101(11). Ms. Barnett was required to schedule her debt to PHEAA. See *U.S. v. Scheiner*, 308 F.Supp. 1315 (D.C.S.N.D.Y.1970); *U.S. v. Robison*, 276 F.Supp. 140 (D.S.C.D.Ill.1967); *U.S. v. Omer*, 232 F.Supp. 746 (D.C.D.Kan.1964); *In re Seigal*, 43 F.Supp. 778 (D.C.N.D.Ga. 1942); 3 Collier on Bankruptcy (15th Ed.), ¶ 521.06[2].

Among the rights afforded to PHEAA as a codebtor are those under Bankruptcy Code § 509. That section deals with the subrogation and allowance of the primary and codebtor claims. Bankruptcy Rule 3005 affords codebtors, including guarantors, rights with respect to filing proofs of claim, including an extension of 30 days after the bar date, and of the right to file acceptance or rejection of the plan. A codebtor would be a party in interest entitled to object to confirmation. See Bankruptcy Rule 3020(b).

Bankruptcy Code § 523(a)(3) excepts from the discharge granted under Chapter 13 debts which were

> "neither listed nor scheduled under section 521(1) of this title, with the names, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) * * * timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing * * *"

Although no discharge has yet issued as the plan has not been completed, it is clearly appropriate to view PHEAA's motion as one which bears directly on the issue of the effect of the Debtor's discharge when eventually issued.

The July 13, 1984 letter quoted above from PHEAA to counsel to the debtor makes it clear that PHEAA did not receive actual notice of the Chapter 13 case until shortly before that date, either from the Debtor or from Peoples Bank of Unity. As this was after the last date to file claims, it is plain that PHEAA could not have timely filed a proof of claim.

The only apparent effect of permitting the *nunc pro tunc* filing of PHEAA's claim will be to decrease the pro-rata share received by other creditors of the Debtor of the monies to be paid under the plan.[4] It is mere serendipity to other creditors when the largest creditor fails to file a claim and the pro-rata distribution to smaller creditors is thereby increased. Such other creditors have no cause to complain if the proper balance is restored by permitting the filing of a claim *nunc pro tunc* by PHEAA under the facts of this case.

An order has been signed.

---

4. The June 6, 1984 order of confirmation states "Ordered, that the debtor's Chapter 13 plan as amended to pay the creditors $150 per month over a period of 60 months be and hereby if confirmed." The plan itself states "From the payments so received, the trustee shall make disbursements as follows * * * (c) pro rata * * dividends to unsecured creditors * * * unsecured creditors who file proof of claim to receive approximately 26% of their claim." The court views the reference to "26%" as merely descriptive of the result if all claims are filed, and not a limitation on payment. Thus, the operative part of the plan is the commitment to pay $150 per month for 60 months, subject to termination only in the event claims are paid in full. Ms. Barnett's obligation under the plan is not limited to payment of 26% on filed claims, an obligation that may not be as great as $150 per month for 60 months.