**In re SOMAR CONCRETE, INC., Debtor.**

**Bankruptcy No. 86-4-2906.**

United States Bankruptcy Court, D. Maryland.

June 29, 1989.

Nelson C. Cohen, Baltimore, Md., for debtor.

William A. Broscious, Richmond, Va., Arthur G. House, Bethesda, Md., for Capitol Cement.

Brian P. Leitch, Washington, D.C., Counsel for creditors' committee.

## MEMORANDUM OF DECISION

### (Motion to Allow Filing of Untimely Proof of Claim)

PAUL MANNES, Chief Judge.

This matter is before the court on the motion of Capitol Cement Corporation ("Capitol") to enlarge the time within which it may file its proof of claim in this Chapter 11 case. Debtor opposes the motion. The court heard the matter on March 30, 1989. The parties submitted post-hearing memoranda at the court's request.

Debtor intends to object to allowance of the claim if Capitol is permitted to file the claim. The question regarding allowance of the claim is for another day.

### FACTS

This case commenced with the filing of an involuntary petition under Chapter 7 on November 26, 1986. Upon debtor's consent the court entered an order for relief, and on debtor's motion converted the case to a case under Chapter 11 on December 5, 1986.

On December 7, 1987, pursuant to Fed.R.Bankr.P. 3003(c)(3), the court set the bar date for filing proofs of claim as 30 days after the date of the notice mailed on December 28, 1987, to all scheduled creditors.

The court confirmed the debtor's Amended Plan of Reorganization and Liquidation on December 9, 1988. Sometime near the confirmation hearing on November 28, 1988, Capitol urges that it learned that debtor was under the protection of the bankruptcy court. Thereupon, Capitol filed the instant motion with an appended proof of claim in the amount of $155,675.07.

The parties stipulate that debtor did not schedule Capitol as a creditor and that Capitol never received notice of this case from the court. The court finds nothing in the record to support a finding that Capitol had actual knowledge of this case to allow the filing of a timely proof of claim.

### DISCUSSION

All agree that since Capitol was not a scheduled creditor, it had to file a proof of claim under Fed.R.Bankr.P. 3003(c)(2). The timeliness of such a filing is governed by Fed.R.Bankr.P. 3003(c)(3), that provides:

FILING PROOF OF CLAIM OR EQUITY SECURITY INTEREST IN CHAPTER 9 MUNICIPALITY OR CHAPTER 11 REORGANIZATIONS CASES

(c) *Filing Proof of Claim.*

(1) *Who May File.* Any creditor or indenture trustee may file a proof of claim within the time prescribed by subdivision (c)(3) of this rule.

(2) *Who Must File.* Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

(3) *Time for Filing.* The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.

(4) *Effect of Filing Claim.* A proof of claim or interest executed and filed in accordance with this subdivision shall supersede any scheduling of that claim or interest pursuant to § 521(1) of the Code.

(5) *Filing by Indenture Trustee.* An indenture trustee may file a claim on behalf of all known or unknown holders of securities issued pursuant to the trust instrument under which it is trustee.

As to Chapter 11 cases, enlargement of time to file a proof of claim is governed by Fed.R.Bankr.P. 9006(b)(1), that states:

TIME

(b) *Enlargement.*

(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be

done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therfor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

(2) *Enlargement Not Permitted.* The court may not enlarge the time for taking action under Rule 1007(d), 1017(b)(3), 1019(2), 2003(a) and (d), 7052, 9015(f), 9023, and 9024.

(3) *Enlargement Limited.* The court may enlarge the time for taking action under Rules 1006(b)(2), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to be extent and under the conditions stated in those rules.

In Chapter 7 and Chapter 13 cases, Fed.R. Bankr.P. 9006(b)(3) limits enlargement of the time in which to file a proof of claim to the specific exceptions enumerated in Rule 3002(c). Therefore, an excusable neglect inquiry is inapplicable to Chapter 7 and 13 cases. Nonetheless, demands of due process must be met in any case under Title 11. *See infra* p. 48.

No bright line rule has emerged regarding the uniform application and interrelation of Rules 3003 and 9006. What is clear, however, is that the decision to permit the filing of a proof of claim out of time under Rule 3003(c) lies within the court's discretion, and that the decision depends on the facts and circumstances in each case.

There are two principal approaches to the issue of allowing an extension of time within which to file an untimely proof of claim in Chapter 11 cases. Some courts have held that the "for cause" standard of Fed.R.Bankr.P. 3003(c)(3) is applicable when deciding whether to allow a proof of claim to be filed past the bar date. *E.g., In re Terex Corp.*, 45 B.R. 290, 292 (Bkrtcy.N. D.Ohio 1985) ("Rule 3003 deals specifically with the filing of proofs of claim in a

Chapter 11 case. Rule 9006 deals with the computation of time within which an act must be performed in a general fashion. The general rule must yield to the specific; otherwise Rule 3003(c)(3) would become a nullity."). This standard is broader than that of "excusable neglect" that focuses solely upon the actions of the creditor. Therefore, under the cause standard the court may consider the total circumstances, including the practice of some debtors in falsely scheduling all claims as "disputed" or "unliquidated," thereby subjecting such creditors to the peril of a bar date. *In re American Skate Corp.*, 39 B.R. 953, 954 (Bkrtcy.N.H.1984).

On the other hand, the Third Circuit held that Rule 3003(c)(3) must be read in conjunction with 9006(b)(1), requiring an "excusable neglect" standard to be met before permitting an untimely claim to be filed. *In re Vertientes, Ltd.*, 845 F.2d 57 (3rd Cir.1988). In its reliance upon cases such as *In re Pigott*, 684 F.2d 239, 244–45 (3d Cir.1982), dealing with a case under the Bankruptcy Act of 1898 and the former Bankruptcy Rules, the court rendered the clause of Rule 3003(c)(3), "for cause shown may extend the time," a nullity. The result is that in the Third Circuit there is no difference among the rules for extensions of time granted claimants in Chapter 7, Chapter 11, or Chapter 13.

Debtor also argues that there would be prejudice to other creditors if the extension were granted. Debtor relies upon *In re Lester Witte & Co.*, 52 B.R. 436, 438 (Bkrtcy.N.D.Ill.1989). There the court offered the following list of factors to be considered:

1) debtor's knowledge of the claim,

2) lack of prejudice to the debtor or the estate,

3) an early state in the bankruptcy proceedings, and

4) the good faith of the creditor.

The *Witte* court would not allow a late claim to be filed, even though the creditor had neither notice of the bankruptcy nor of the bar date, because the allowance of the claim would undermine the compromise plan worked out between the debtor and

creditors. Debtor gains further support for this proposition from *Collier:*

> After the passage of the bar date, an extension may be granted upon a showing of cause as well. The standard to be applied by the court is not simply the standard of excusable neglect fixed by rule 9006, although the excusable neglect standard has been applied to determine if an extension should be granted. In determining whether or not to grant an extension of the time for filing a specific claim, the extension will be denied if to grant it would be inequitable. [Footnotes omitted].

8 *Collier on Bankruptcy* Para. 3003.05[4] at 3003–11, 12 (15th ed. 1989).

Were the court to concentrate on the issue of prejudice, the equities elaborated in *Witte* do not favor debtor. The debtor in *Witte* was a partnership. The moving creditor had recourse against the partners unlike the compromising creditors who had released the partners from liability. Here, Capitol can look to no one other than debtor for payment. In *Witte*, the sum available for distribution was fixed, and allowing an additional claim would reduce the compromising creditors' distribution. Here, allowing Capitol's claim will not diminish the creditors' distribution under the plan, only delay it. If the claim is allowed, the purchasers of debtor's assets, John Driggs and William Franey, will have to contribute additional sums to fund the plan.[1]

The excusable neglect standard precludes equitable considerations of the effect of the extension on debtor and other creditors. *In re South Atlantic Financial Corp.,* 767 F.2d 814 (11th Cir.1985) *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986), is a frequently cited case on excusable neglect in the context of untimely proofs of claim. The *South At-* *lantic* court refused to consider possible prejudice to other parties when determining excusable neglect, stating:

> [W]e believe that such a construction would do violence to the plain meaning of the language of both Rule 9006(b) and Fed.R.Civ.P. 6(b)(2). Both rules extend the time for the doing of an act where *"the failure to act* was the result of excusable neglect."* It is clear from this language that the focus of these rules is on the movant's actions and the reasons for those actions, not on the effect that an extension might have on the other parties' positions.

*Id.* at 818–19. Thus the excusable neglect inquiry is far narrower than the inquiry seeking cause for the extension of time.

This circuit has not explicitly adopted either standard. However, the reasoning in *Maressa v. A.H. Robins Co.,* 839 F.2d 220 (4th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 76, 102 L.Ed.2d 53, leads this court to follow the excusable neglect standard. In *Maressa,* the Fourth Circuit was dealing with a Dalkon Shield claimant whose action against Robins was stayed by the Chapter 11 filing. Her claim was listed as an unliquidated, contingent and disputed claim. The district court established a bar date under Rule 3003(c)(3). Maressa received actual notice of the bar date through her attorney who timely filed approximately thirty other claims. The attorney failed to file a timely claim for Maressa.

The district court found that justice required that it permit the filing because Robins had notice of the lawsuit pending. In remanding the case, the Fourth Circuit stated:

> The clear Congressional intent to require filing of valid proofs of claims within the established time limits precludes any exceptions based on general equitable prin-

---

1. Under the confirmed plan, Class I consists of unsecured creditors with claims of $1,000 or less who are to be paid 65%. Class II consists of unsecured creditors with claims greater than $1,000 who share pro rata the residual after payment of administrative claims, priority claims, and Class I. Classes III and IV, the purchasers' claims and shareholder interests in the debtor, receive nothing. The plan is funded by the sale of debtor's assets to purchasers for $460,000. In addition, if the claims in Classes I and II exceed $1,067,000, the purchasers must contribute an amount equal to 65% of that excess. At present, the allowed claims of Classes I and II total approximately $1,073,000.

ciples. While the effects of the bar date appear harsh, any other result would undermine the clear purpose of the Bankruptcy Rules.

Rule 60(b)(1) of the Federal Rules of Civil Procedure, however, provides relief from a final order of the court upon a showing of "mistake, inadvertence, surprise, or excusable neglect...." This rule sets forth a tangible standard which should be applied in this case to determine whether the untimely filing of a claim should be permitted.

839 F.2d at 221. *See, Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 811 (4th Cir.1988) ("[T]he district court erred because it failed to distinguish between the fault of Fodor's attorney and the fault if any of Fodor itself.").

■ While capable of many formulations, this court will use a generally accepted definition of excusable neglect enunciated in *In re Manning,* 4 B.C.D. 304, 305 (D.Conn.1978). Excusable neglect is "the failure to timely perform a duty [that] was due to circumstances beyond the reasonable control of the person whose duty it was to perform." [2] The burden of proving excusable neglect is on the party moving for an extension of time. *Manhattan–Ward, Inc. v. Grinnell Corporation,* 490 F.2d 1183, 1186 (2d Cir.1974).

Having wandered thus far in this analysis, the court finds that cases are all over the map. The courts that have addressed the issue follow no clearly established scheme to decide what was within or without of the reasonable control of the creditor whose duty it was to timely file a proof of claim. Rather, the decisions seem to be based on the peculiar facts and circumstances of each case. Some courts have adopted a per se rule that failure to receive notice of a bar date is excusable neglect. *In re Yoder Co.,* 758 F.2d 1114, 1121 (6th Cir.1985) (held: "Non-receipt is sufficient ground for excusable neglect...."); *In re Wm. B. Wilson Mfg. Co.,* 59 B.R. 535, 538 (Bkrtcy.W.D.Tex.1986) (following *Yoder*).

Other courts have imposed affirmative duty on creditors to file timely proofs of claim, that is, to perform duties within the creditors' reasonable control. *In re STN Enterprises, Inc.,* 94 B.R. 329 (Bkrtcy.Vt. 1988) (creditor with actual knowledge of case had duty to correct incorrect zip code on mailing matrix); *In re Byrd,* 94 B.R. 458 (Bkrtcy.S.D.Ohio 1988) (IRS obligated to file proof of claim despite no notice of bar date where it had actual knowledge of case); *cf. In re Burruss,* 65 B.R. 407 (Bkrtcy.Md.1986) (an IRS agent's knowledge of a bankruptcy case not a substitute for notice of the bar date to the IRS).

■ The debtor argues that Capitol was on inquiry notice as to the filing of the case and should have filed its claim earlier. Debtor contends that its bankruptcy was common knowledge in the local concrete industry. Debtor also finds it inconceivable that Capitol did not actively pursue a debt that constituted one quarter of its aged receivables account. However, debtor failed to prove that Capitol had actual knowledge of the bankruptcy prior to initiating the instant matter.

Capitol's due process rights overcome any lack of business acumen on its part. Due process requires notice and an opportunity to be heard before the government can deprive one of life, liberty, or property. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). Moreover, the notice must be, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. For the reasons espoused in *Mullane,* Fed.R.Bankr.P. 2002(a)(8) requires a 20–day notice to parties in interest of the time fixed for filing proofs of claim pursuant to Rule 3003(c).

Debtor cannot contend that mere rumor within a local business community can satisfy the notice required in this matter. Yet even if Capitol had actual notice of debtor's case, it has been held that lack of reason-

---

**2.** A finding of excusable neglect is proper only when circumstances are extraordinary or unique. *In re Sheldon's of Maine,* 34 B.R. 277, 279 (Bkrtcy.Me.1983).

able notice regarding the bar date mandates an extension of time to file a proof of claim.[3] In *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953), the Court stated, "even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred."

Debtor would distinguish this case by insisting that Capitol is an unknown creditor; that is, debtor was unaware that Capitol had any claim against the estate. If Capitol was an unknown creditor, its due process rights may have not been violated by a lack of notice. The leading case for the preceding proposition is *In re Siouxland Beef Processing Co.*, 55 B.R. 95 (Bkrtcy.N.D.Iowa 1985). In *Siouxland*, the court said:

Where, as here, a debtor has no knowledge of a claim, it can hardly be expected to include it in its list of creditors or provide notice to an unknown creditor. In such instance, all that can be done is to file the petition with as thorough a schedule of debts as possible. When this is done, and there are no facts to indicate that the debtor has knowingly failed to list a creditor, then the debtor has done all that should be done. If by happenstance there exists a person unknown to the debtor who has a claim, it is incumbent upon that person, once he becomes aware that bankruptcy proceedings have been initiated, to inquire further in an effort to determine whether his claim

might be affected. The Ninth Circuit, in the case of *Matter of Gregory*, 705 F.2d 1118 (9th Cir.1983), has said that when a holder of a large unsecured claim has notice enough to excite attention and put him on his guard such that further inquiry would be in order, that notice is "notice of everything to which such inquiry may have led." [quoting *D.C. Transit System, Inc. v. United States*, 531 F.Supp. 808, 812 (D.D.C.1982) *rev'd*, 717 F.2d 1438 (D.C.Cir.1984).]

55 B.R. at 100. This limitation has no application here. Where the claim of the unknown creditor has been barred, there has been a showing, unlike here, that the creditor had actual knowledge of the bankruptcy case. *In re Production Plating, Inc.*, 90 B.R. 277, 284–85 (Bkrtcy.E.D. Mich.1988); *In re Larsen*, 80 B.R. 784, 787 (Bkrtcy.E.D.Va.1987).

The facts presented at the hearing of this matter paint a picture of contrasts. Capitol's claim stems from transactions ending in September 1985. Capitol's subsequent collection efforts consisted merely of statements it professes to have sent to debtor's Baltimore address. However, debtor ceased doing business from its Baltimore facility when that plant was sold. The court considered the testimony of debtor's employee, Connie Jamerson, to be truthful in all respects. The court is convinced that Capitol was not listed because the records of debtor showed nothing owing to it. The supplier relationship it had with debtor had ceased before the closing

---

**3.** This statement is limited to cases under Chapter 11. The rule and result differ in other chapters. In individual Chapter 7 cases the debt of an unlisted creditor without actual notice of the filing of the case is excepted from debtor's discharge under 11 U.S.C. § 523(a)(3). Debtor faced with a debt that is not discharged may seek to reopen the case to deal with that debt. Fed.R.Bankr.P. 5010; *Stark v. St. Mary's Hospital* (*In re Stark*), 717 F.2d 322 (7th Cir.1983). A Chapter 12 discharge is also subject to the exception of § 523(a)(3). 11 U.S.C. § 1228(a)(2). A Chapter 13 "hardship" discharge is subject to that exception as well. 11 U.S.C. § 1328(c).

In the ordinary Chapter 13 case, the discharge extends to all debts provided for by the plan or disallowed other than a debt provided for under § 1322(b)(5) (long-term debt) or § 523(a)(5)

(family support). 11 U.S.C. § 1328(a). The question remaining in non-hardship Chapter 13 cases is whether a creditor without notice and thereby without a timely claim has been provided for by the plan. The cases appear not to permit a loss to creditors because of a lack of actual notice caused by debtor's failure. *See In re Gamble*, 85 B.R. 150 (Bkrtcy.N.D.Ala.1988) (Debtor's petition did not include all names used by her within six years before filing. Creditor failed to receive adequate notice of filing and debt determined not to be discharged.); *In re Barnett*, 42 B.R. 254 (Bkrtcy.S.D.N.Y.1984) (Guarantor of Chapter 13 debtor's student loan was not scheduled and did not receive notice so as to be able to file a timely claim. Held—due process compels that the guarantor be permitted to file a claim nunc pro tunc).

of the Baltimore office. The court further finds that the invoices said to be mailed by Capitol were never received by debtor at either the Baltimore office or the Capitol Heights office.

Nonetheless, once Capitol is said to have learned of debtor's bankruptcy in November 1988, it acted swiftly to pursue its claim in this court. Capitol's earlier inattention is inexplicable. But the court cannot say that Capitol continued to sit on its rights at the time it alleged that it learned of debtor's case. Whether laches or some other defense will preclude Capitol's underlying claim requires a further evidentiary hearing should debtor object to the claim. On the record before it, however, the court will grant Capitol's motion to enlarge the time within which to file its proof of claim.[4]

In summary, the court finds nothing before it at this stage to show that Capitol received notice of the bar date. Capitol has met its burden that its failure to file a proof of claim was the result of excusable neglect. Therefore, Capitol will be allowed to file its proof of claim. Debtor may yet object to Capitol's claim. The issue of laches may be fully explored at that time as well as the issue of Capitol's knowledge of the filing of this case should that fact be developed upon further discovery.

An order will be entered in accordance with the foregoing.

---

**4.** It has been suggested that in Chapter 11 cases creditors must exert a higher degree of diligence to inform themselves of bar dates in individual cases than in corporate cases. In the Eleventh Circuit, the creditor with actual knowledge of the bankruptcy case has a burden of inquiry in an individual case while the creditor with knowledge of a corporate Chapter 11 case suffers no prejudice unless it has actual knowledge of the bar date. Compare *In re Alton,* 837 F.2d 457 (11th Cir.1988) with *In re Spring Valley Farms, Inc.,* 863 F.2d 832 (11th Cir.1989).