**In re David GLOW, Debtor.**

**Bankruptcy No. 88–60152.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division
at Gary/Lafayette.

Feb. 27, 1990.

Thomas Appel, Lansing, Ill., for debtor.

William Bryan, Homewood, Ill., for objectant.

## MEMORANDUM OPINION & ORDER [1]

KENT LINDQUIST, Chief Judge.

### I

### *Statement of Proceedings*

This Chapter 13 case came before the Court on the Objection by the Debtor filed on September 7, 1988 to the proof of claim of the Bank of Homewood (hereinafter: "Bank") filed August 15, 1988, in the sum of $45,750.43 by its Attorney William Bryan.

To say the least, this case has a convoluted procedural history. The Debtor originally commenced this Chapter 13 case on January 27, 1988. The Chapter 13 statement originally filed on that date at No. 9 "Foreclosures, executions, and attachments" lists "Condominium under levy from Bank of Homewood, 810 Glenwood–Dyer Road, Glenwood, Illinois, 60425." The original Chapter 13 statement at No. 12(b) "Secured Debts" lists the Bank twice, first at 810 Glenwood–Dyer Road, Glenwood, Illinois 60425 for a "car loan". No other details as to this loan are given. The Bank is also listed at No. 12(c) "Unsecured Debts" at the same address, but no further information whatsoever is given as to what the nature, if any, of what any other debt to the Bank was. Finally, the Bank was listed on the Debtor's List of Creditors at the above address, but no further information was given.

By Order of the Court on February 3, 1988, a meeting of creditors was scheduled for March 1, 1988 pursuant to § 341(a). That Order set May 31, 1988 as the last day to file claims, and set a bar date to object

---

1. This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52 as made applicable by Bankruptcy Rules 9014 and 7052.

to the Debtor's plan as being within fifteen (15) days after the first meeting.

No plan was filed by the Debtor with his original petition.

The record reflects a certificate of service by the Clerk's office that the above § 341 notice was mailed twice to the Bank on February 3, 1988 to the address of 810 Glenwood–Dyer Road, Glenwood, Illinois, 60425 as originally scheduled by the Debtor.

On February 19, 1988, the Debtor filed an Amended Petition, Chapter 13 Statement, and Plan. The Amendment included a Plan which provided for only one creditor, the Bank, which was shown as "secured and unsecured debt" to be paid over 36 months at $100.00 a month. The Plan did not set out the nature of the collateral, its value, or a discount rate so as to provide present value, or whether the Bank was to retain a lien on whatever property it purportedly had a security interest.

The February 19, 1988 Amended Statement now reflected at No. 9 "Foreclosures executions and attachments", that the Bank's address was now 2034 Ridge Road, Homewood, Illinois, 60430, and "Condominium under levy from Bank of Homewood" without further detail. The February 19, 1988 Amended Statement at No. 12(b) "Secured Debts" also showed the Bank holding a secured loan in the disputed sum of $15,245.49 secured by a 1984 Chevrolet Camero, and at No. 12(c) "Unsecured Debts", the Bank holding an unsecured claim in the sum of $15,823.42 which was not disputed. The Amended Statement at No. 14(a), "Real Property", schedules no real estate whatsoever, and at No. 14(b) "Personal Property" schedules no tangible personal property whatsoever.

The § 341 meeting originally set for March 1, 1988 was continued as per the trustee's report in the file. Neither the Debtor nor the Debtor's attorney appeared, and the § 341 meeting was thus reset by the U.S. Trustee on March 9, 1988 for March 29, 1988. The Debtor by Notice dated March 9, 1988 was required to serve the notice resetting the first meeting on all creditors and file a certificate of service to that effect in five days. On March 16, 1988 a certificate of service was filed by the Debtor showing service on the Bank at 2034 Ridge Road Homewood, Illinois 60430, and its attorney William J. Bryan at 18118½ Martin Avenue, Homewood, Illinois 60430.

The record reveals that the first meeting of creditors was in fact held on March 29, 1988, and attorney William Bryan appeared on behalf of the Bank.

On April 14, 1988, the Debtor filed his "Summary of Chapter 13 Plan". The plan shows the Bank as the only creditor. The plan proposes to pay the Trustee $215.00 a month for 36 months for a total of $7,740.00. The Bank is shown at No. 8 as Secured Creditor as to an "auto" with the remark "allegedly stolen or repossessed".

On June 18, 1988, the Debtor filed an "Amended Chapter 13 Plan" showing the Bank as the Debtor's "sole creditor". The Amended Plan provided for a "partial payment" to the Bank in the sum of $7,740.00 or "approximately twenty-five percent (25%) of the total debt due said creditor...." The nature of any property secured by said debt is not set out in the Amended Plan, nor is the nature of any lien or liens of the Bank, the nature or description of any collateral, or whether secured by a security interest or by judicial lien. For that matter, the Plan, such as it is, does not treat the Bank specifically as secured or unsecured.

By order and notice dated June 14, 1988, the Bank as the only creditor, the Trustee and the U.S. Trustee were given until July 5, 1988 to object to the Amended Plan filed June 13, 1988, and that if no timely objections were filed, the Amended Plan could be confirmed without further notice and hearing. The Debtor was ordered to serve said Notice and Order and file his Certificate of Service. On June 20, 1988, the Debtor filed his Certificate of Service showing service of the Order and Notice as to the Amended Plan on the Bank at 2034 Ridge Road, Homewood, Illinois 60430, and on the Chapter 13 trustee Chael. No Certificate of Service was made as to attorney William Bryan.

For reasons unknown to the Court, a second Order and Notice was issued on July 26, 1988 as to the Debtor's First Amended Plan filed June 13, 1988 giving the Bank, the Trustee, and the U.S. Trustee until August 3, 1988 to object thereto. The Debtor was again ordered to serve the same on the Bank, the U.S. Trustee, the Trustee and file a Certificate of Service on July 29, 1988. The Debtor again filed his Certificate of Service this time showing service on the Bank at 2034 Ridge Road, Homewood, Illinois 60430, the Bank's attorney at 18118½ Martin Avenue, Homewood, Illinois 60430, and the Chapter 13 Trustee, certifying service was made on July 28, 1988.

There being no objections to the Amended Plan by Order of the Court on July 26, 1988, the Debtor's Amended Plan was set for hearing on Confirmation of the Debtor's First Amended Plan on August 23, 1988, and on that date an Order was entered confirming the Debtor's Amended Plan.

The Bank then filed its proof of claim on August 25, 1988, in the sum of $45,470.43 based upon an alleged 1) Note and Security Agreement dated December 10, 1984, and 2) a Secured Business Note dated December 31, 1984. At No. 9 of the claim it alleged that the Note No. 1 is secured by a 1984 Chevrolet Camero, and Note No. 2 is secured by a lien "levied against Glenwood Realty—Postjudgment." Although the claim shows a total amount due of $45,-740.43, the claim states it is apparently based on two judgments entered in the Cook County Circuit Court under Cause No. 85 M6–3834 for $15,823.42 on July 25, 1985, and Case No. 85–M6–3833 on October 2, 1985 in the sum of $14,745.49. The claim does not align the two judgments as to which judgment was taken on each of the two notes mentioned therein. The two judgments do not equal $45,745.39, unless undesignated post-petition interest is included but not computed and shown for claim purposes.

The claim does not substantially meet the requirements of Official Bankruptcy Form 19, nor does it comply with the requirements of Bankr.R. 3001(c) and (d) as there is not attached thereto the writing on which the claim is based (No. 4), nor does it attach evidence that any alleged security interest has been perfected (No. 9).

On September 7, 1988, the Debtor filed his objection to the Bank's claim of August 25, 1988 as being untimely, the last date for the filing of claims being May 31, 1988 pursuant to the Order in the § 341 notice of February 3, 1988.

## II

### Conclusions of Law and Discussion

No objection was made by counsel to the jurisdiction of this Court as to this matter, the Court finds jurisdiction to be present, and that this contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (L).

Section 501 of title 11 provides as follows:

(a) A *creditor* or an indenture trustee *may file a proof of claim.* An equity security holder may file a proof of interest.

(b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.

(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

(d) A claim of a kind specified in section 502(e)(2), 502(f), 502(g), 502(h) or 502(i) of this title may be filed under subsection (a), (b), or (c) of this section the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition.

The Code does not set out the time limits for filing a claim. The Bankruptcy Rules set the time limits, the form, and the procedure for filing claims, which will determine whether claims are timely or tardily filed. *See,* Norton Bankruptcy Law and Practice, Bankruptcy Code, *Legislative History and Comments,* § 501(a) (Callaghan & Co.).

Section 502(a) provides as follows:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

Section 523(a)(3)(A) provides as follows:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of proof of claim, *unless such creditor had notice or actual knowledge of the case in time for such timely filing;* (emphasis supplied).

Bankruptcy Rule 3002(c) provides as follows:

(c) Time for Filing. In a chapter 7 liquidation or *chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code,* except as follows:

(1) On motion of the United States, a state, or subdivision thereof before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the United States, a state, or subdivision thereof.

(2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

(4) A claim arising from the rejection of an executory contract of the debtor may be filed within such time as the court may direct.

(5) If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

(6) In a chapter 7 liquidation case, if a surplus remains after all claims allowed have been paid in full, the court may grant an extension of time for the filing of claims against the surplus not filed within the time hereinabove prescribed.

The procedure under Bankr.R. 3002(c) as to the time for filing claims, which is only applicable to Chapters 7 and 13 must be compared with the procedure for the time for filing claims under Bankr.R. 3003(c)(3) which is only applicable to Chapters 9 and 11, and which provides as follows:

(3) **Time for Filing.** The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.

It is also noted that Bankr.R. 9006(b) and (c) provide as follows:

(b) Enlargement.

(1) IN GENERAL. *Except as provided in paragraphs (2)* and (3) of this subdivision, *when an act is required* or allowed *to be done at or within a specified period by these rules* or by a notice given thereunder or by order of court, *the court for cause shown may at any time in its discretion* (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as

extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

(2) ENLARGEMENT NOT PERMITTED. The court may not enlarge the time for taking action under Rule 1007(d), 1017(b)(3), 1019(2), 2003(a) and (d), 7052, 9015(f), 9023, and 9024.

(3) ENLARGEMENT LIMITED. *The court may enlarge the time for taking action under Rules* 1006(b)(2) *3002(c)*, 4003(b), 4004(a), 4007(c), 8002, and 9033, *only to the extent and under the conditions stated in those rules.*

(c) Reduction.

(1) IN GENERAL. Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.

(2) REDUCTION NOT PERMITTED. *The court may not reduce the time for taking action under Rules* 2002(a)(4) and (a)(8), 2003(a), *3002(c)*, 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

Thus, the provisions of Bankr.R. 9006(b)(1) relating to a motion filed after the expiration of a specified time to permit an act to be done where the failure to act was the result of excusable neglect is expressly limited by Bankr.R. 9006(b)(3) as it relates to Bankr.R. 3002(c) governing the time for filing claims. Bankruptcy rule 3002(c) has no provision providing for the enlargement of the time for filing Chapter 7 or Chapter 13 claims except as expressly set out therein in subsections (c)(1) through (c)(6). On the other hand, enlargement of time under Bankr.R. 3003(c)(3) is not prohibited by Bankr.R. 9006(b)(3), and is thus governed by Bankr.R. 9006(b)(1) which allows a late filing upon the showing of excusable neglect.

The Debtor in his objection asserts there is no basis for extending the time for filing claims beyond the bar date set by the Court pursuant to Bankr.R. 3002(c), and that this bar date cannot be enlarged pursuant to Bankr.R. 9006(b)(3). The Debtor's objection further asserts that in *In re Wilkens*, 731 F.2d 462 (7th Cir.1984) it was held that the period for the filing of claims in a Chapter 13 is generally treated as a statute of limitations not subject to extension by the Bankruptcy Court.

The Debtor also filed a "Summary of Argument" on March 6, 1989, and noted that while the Bank did not receive official notice from the clerk of the bar date to file claims by May 31, 1988 as set out in the Order setting the § 341 hearing on February 3, 1988, the Bank was not prejudiced in that the Bank's attorney was served with the copy of the automatic stay on January 27, 1988, and he also attended the § 341 meeting on March 29, 1988 and examined the Debtor. *See*, "Verified Statement of Facts" filed March 6, 1989 by Debtor's counsel in which he states he personally delivered the stay to the office of Attorney Bryan as attorney for the Bank which was accepted by his secretary. These facts have not been refuted by the Bank.

The Debtor asserts that under agency law notice to the Bank's attorney Bryan is sufficient notice to the Bank, *citing, Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 457 (6th Cir.1982); *In re Furrer*, 67 B.R. 654 (Bankr.E.D.Wis.1986); and 3 *Collier on Bankruptcy* § 523.13, p. 523–84 (L. King 15th Ed.).

The Debtors Summary of Argument also asserts that the weight of authority treats the filing period as mandatory and immutable, is generally treated as a statute of limitations, and is not subject to extension by the bankruptcy court, again *citing, Wilkens*, 731 F.2d at 464, *supra; In re Furrer*, 67 B.R. 654, *supra; In re Chirillo*, 84 B.R. 120 (Bankr.N.D.Ill.1988); *In re Street*, 55 B.R. 763, 766 (B.A.P. 9th Cir. 1985).

The Bank asserts that in both Chapters 11 and 13, an extension of time to file a claim is proper as to a creditor who is not

notified of the case, and the failure to file a claim is due to a lack of notice of a deadline, *citing, In re Yoder Company,* 758 F.2d 1114 (6th Cir.1985) (Chapter 11 case); *In re Barnett,* 42 B.R. 254 (S.D.N.Y.1984) (Chapter 13 case), *citing, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *In re Moskowitz,* 35 B.R. 750 (S.D.N.Y.1983) (Chapter 11 case). It is noted that in the *Barnett* case, the creditor was not scheduled and received *no official or actual notice* of the bar date to file a claim.

The Bank thus asserts that the fact that it had notice of the bankruptcy itself does not constitute sufficient substitution for proper notice as to the bar date to file a claim.

The Debtor in his objection asserts there is no basis for extending the time for filing claims beyond the bar date set by the court pursuant to Bankr.R. 3002(c), and that this bar date cannot be enlarged pursuant to Bankr.R. 9006(b)(3). The Debtor's objection further asserts that in *In re Wilkens,* 731 F.2d 462 (7th Cir.1984), it was held that the period for the filing of claims is generally treated as a statute of limitations not subject to extension by the Bankruptcy Court. The *Wilkens* court state as follows:

> We must first determine what procedures govern the filing of claims by unsecured creditors in a chapter 13 proceeding. Section 501 of the Bankruptcy Reform Act of 1978 generally permits the filing of proofs of claim, but provides no time limits for the filings. However, the legislative history of that section states that "[t]he Rules of Bankruptcy Procedure will set out the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed." H.R. No. 95–595, 95th Cong. 1st Sess. (1977) 351; S.R. No. 95–989, 95th Cong. 2d Sess (1978) 61 U.S. Code Cong. & Admin.News 1978, pp. 5787, 5847, 6307. Since the suggested interim bankruptcy rules and local bankruptcy rules fail to address the question of time limits on filings, the Rules of Bankruptcy Procedure under the Bankruptcy Act of 1898 control. *In re Seminole Backhoe Services, Inc.,* 33 B.R. 914, 916 (Bkrtcy.1983). *But cf. In re Corbett,* 27 B.R. 442 (Bkrtcy.1983).

Rule 13–302(e)(2) deals with the time for filing proofs of unsecured claims in chapter 13 proceedings. The rule provides, in relevant part: "Unsecured claims. Unsecured claims, whether or not listed in the Chapter XIII Statement, must be filed within 6 months after the first date set for the first meeting of creditors. . . ." R.Bankr.P. 13–302(e)(2). The advisory committee note explains that the language "of subdivision (e) is adapted from § 57n of the Act [11 U.S.C. § 93n (repealed)] and retains the time limits on the filing of claims established by the statutory provisions."

Cases construing the rule and statute treat the six-month filing period as a statute of limitations not subject to extension by the bankruptcy court. *In re Ebeling,* 123 F.2d 520 (7th Cir.1941); *In re Pigott,* 684 F.2d 239 (3rd Cir.1982). While the weight of authority treats the period as mandatory and immutable, a minority of courts have left open the possibility that they could exercise their equitable powers to enlarge the time for filing, given "sufficient" cause. Under this view, an equitable extension of time can be granted (1) if the fraud of a debtor prevents the timely filing by a creditor; (2) the creditor fails to receive notice of the proceedings; or (3) other extraordinary circumstances arise. Courts do not, however, permit late filing necessitated by the negligence of a creditor's attorney.

The sole explanation offered by appellee for its late filing was that counsel "relocated his office . . . and in the process inadvertently filed this matter with his closed files prior to the filing of the claim. . . ." Appellee does not allege fraud on the part of the debtor, nor does it, or could it, argue lack of notice or other extraordinary circumstances. We therefore need not decide whether the bankruptcy court had discretionary authority to extend the filing period for appellee, for even assuming that a bankruptcy court possesses an equitable pow-

er to permit a late filing, that power should not be exercised here. At most it should be used in limited circumstances to prevent an unfair result which arises through no fault of the party seeking equity. *In re Seminole Backhoe Services, Inc.*, 33 B.R. at 918. Here appellee explains its tardy filing by pointing to the neglect of its counsel. Such an excuse fails to justify an extension of time regardless of the scope of the court's equitable discretion. The bankruptcy court thus abused whatever discretion it might have had, if any, in extending the filing period for appellee.

*Id.* at 463–64 (Footnotes omitted).

Although the *Wilkens* case was decided under Rule 13–302(e)(2), the predecessor to the present Bankr.R. 3002(c), this Court concludes that the holding in *Wilkens* is still applicable under the present Bankruptcy Rules.

The court also agrees with the conclusion reached by the court in *In re Chirillo*, 84 B.R. 120 (Bankr.N.D.Ill.1988). In this Chapter 13 case the creditor was not scheduled as a creditor, and did not receive official written notice from the Bankruptcy Clerk of the petition or of the first meeting of creditors setting the time to file claims; nor did it ever received any actual notice of the bankruptcy. The creditor moved for leave to file a claim more than 33 months after the bar date when it first learned of the bankruptcy. The court denied the claim as untimely based on the trustee's objection and stated as follows:

The basic issue before the court is whether in a Chapter 13 case, a proof of claim may be filed after the 90–day bar date of Bankruptcy Rule 3002(c). Although Section 501 of Title 11 governs the filing of proofs of claim, the time limits for filing such proofs are set by Rule 3002(c). The rule provides that in a Chapter 13 case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to section 341(a) of the Code. The rule lists six exceptions to the 90–day bar date, none of which apply in the present case.

The discretion of the bankruptcy court to extend the bar date provided in Bankruptcy Rule 3002(c) is limited by Bankruptcy Rule 9006(b)(3). That rule provides that the court may enlarge the time for taking action under Rule 3002(c) only to the extent and under conditions stated in that rule. Because the exceptions of Rule 3002(c) do not address failure of a debtor to give notice, a simple application of the language of the rules suggests that the 90–day time limit is an absolute bar to the filing of proofs of claim in the circumstances of this case.

Case law supports this construction. Former Bankruptcy Rule 302(e) contained the same type of bar date as present Rule 3002(c); the only difference is that the former rule allowed six months from the first meeting of creditors instead of 90 days. *See In re Brown*, 73 B.R. 740, 742 (Bkrtcy.W.D. Wis.1987). The weight of authority treated the six-month time limit in the former rule as mandatory and immutable to an absolute bar to late-filed claims.[2] Cases construing Rule 3002(c) similarly treat the 90–day period as a statute of limitations not subject to extension by the bankruptcy court.[3]

Even where the equities have weighed strongly in favor of extending the time period, the strict time limits have been upheld. *See In re Pigott*, 684 F.2d 239, 243 (3d Cir.1982). The cases hold that the time limits are dictated by the bankruptcy rules and are necessary to insure the swift distribution of the bankruptcy estate. *See In re Good News Publishers, Inc.*, 33 B.R. 125, 126 (M.D.Tenn. 1983). *See also In re Owens*, 67 B.R. 418, 423 (Bkrtcy.E.D.Pa.1987) ("[E]ven if so inclined, a bankruptcy court has no equitable power to extend the deadline for filing proofs of claim.")

The point is perhaps most forcefully made in the case of *In re International Resorts, Inc.*, 74 B.R. 428, 429 (Bkrtcy.N. D.Ala.1987). This case involved a creditor in a situation quite similar to Central's. The creditor was not listed in the debtor's schedules, and did not receive a notice of the first meeting of creditors or

the information concerning the filing of proofs of claim. The court noted that:

> The inherent equity powers of the bankruptcy court ... are a tempting instrument to mitigate the harshness involved in any statutory time limitation, but ... courts have generally withstood the temptation even in situations in which the equities of the case ... spoke strongly in favor of equitable relief.

74 B.R. at 429–30. The court then addressed the specific statutory time limitations in filing proofs of claim, and noted that:

> Under no circumstances other than those specifically referred to in the statute may the court admit a claim to untimely proof, but is under a duty to disallow it, with no power to substitute equitable considerations for the manifest intent of Congress.

74 B.R. at 430. In upholding the trustee's objection to the untimely filed claim, the court acknowledged that the creditor would never have any means of collecting its judgment after distribution by the trustee of the funds in the defunct corporation's case. 74 B.R. at 430.

It might be that such a result, in some cases, could constitute a denial of due process, depriving the creditor of its interest in property (a share in the debtor's estate) without an opportunity to be heard. That, however, is not the situation in the present case. If Central in fact had no notice of the pendency of this case in time to file a timely proof of claim, its claim is not dischargeable. 11 U.S.C. § 523(a)(3). Thus, at the conclusion of the debtor's case whether by dismissal prior to completion of the plan, or by discharge at its completion, Central would be able to assert its claim.

---

2 *See Wilkens v. Simon Brothers*, 731 F.2d 462, 464 (7th Cir.1984); *In re Pigott*, 684 F.2d 239, 242 (3d Cir.1982); *In re Fleming Construction Corp.*, 63 B.R. 392, 393 (E.D.Pa.1986); *In re Good News Publishers, Inc.*, 33 B.R. 125, 126 (M.D.Tenn.1983); *In re International Resorts, Inc.*, 74 B.R. 428, 430 (Bkrtcy.N.D.Ala.1987); *Matter of Grocerland Coop, Inc.*, 32 B.R. 425, 426 (Bkrtcy.N.D.Ill.1983); *In re Brown*, 27 B.R. 771, 773 (Bkrtcy.N.D.Ill.1983); *In re Francis*, 15

B.R. 998, 1004 (Bkrtcy.E.D.N.Y.1981); *In re Foster*, 11 B.R. 476, 477 (Bkrtcy.S.D.Cal.1981).

3 *See Matter of Brown*, 73 B.R. 740, 742 (Bkrtcy.W.D.Wis.1987); *In re Stern*, 70 B.R. 472, 474 (Bkrtcy.E.D.Pa.1987); *In re Owens*, 67 B.R. 418, 423 (Bkrtcy.E.D.Pa.1987); *In re Key*, 64 B.R. 786, 788 (Bkrtcy.M.D.Tenn.1986); *In re Street*, 55 B.R. 763, 766 (Bkrtcy.App. 9th Cir. 1985); *In re Ryan*, 54 B.R. 105, 106 (Bkrtcy.E.D. Pa.1985).

*Id.* at 121–22 (Only footnotes 2 and 3 included).

Bankruptcy Rule 3002(c) is thus an absolute bar to claims filed after 90 days where none of the exceptions set out therein are applicable. *See, In re Tomlan*, 102 B.R. 790, 791–92, N. 1 (E.D.Wash.1989); *In re Wilt*, 84 B.R. 480 (Bankr.N.D.Ohio 1988); *In re Ungar*, 70 B.R. 519 (Bankr.E.D.Pa. 1987); *In re Furrer*, 67 B.R. 654 (Bankr.E. D.Wis.1986); *In re Street*, 55 B.R. 763 (9th Cir.B.A.P.1985); *In re Schneider*, 51 B.R. 196 (D.Colo.1984); *In re Grigelevich*, 81 B.R. 3 (Bankr.D.R.I.1987).

The six exceptions set out in subsections (1) through (6) of Bankr.R. 3002(c) are inapplicable in the case *sub judice*, as the court may only extend the bar date in accordance with the exceptions thereunder. *In re Wharry*, 91 B.R. 31 (Bankr.N.D.Ohio 1988) (Chapter 12 case adapting Chapter 13 rules).

■ Thus, the Court has no power to enlarge the time to file Chapter 13 claims, and the claim of the Bank must be denied as untimely inasmuch as its late claim does not fall within one of the six express exceptions found in Bankr.R. 3002(c). Accordingly, the Bank may not receive any distributions by the trustee according to the terms of the confirmed plan. However, the consequences of this holding is not clear. Is the *in personam* debt of the Debtor to the Bank discharged upon completion of the confirmed plan, and even if discharged, is any underlying lien held by the Bank to secure any such debt voided by the completion of the confirmed plan by the Debtor and his discharge?

The additional question here is, although the Bank did not get proper written official notice of the bar date to file claims from the Clerk, whether the actual notice of the

Bankruptcy itself, first to the Bank's attorney by service of the automatic stay on him on January 27, 1988, together with actual written notice of the continued § 341 meeting, and the examination of the Debtor at the continued § 341 meeting on March 29, 1988 was sufficient actual notice to or knowledge by the Bank of the case for it to timely file a claim pursuant to § 523(a)(3)(A), so that by its failure to file its claim by the May 31, 1988 bar date its pre-petition claims were discharged.

There is no dispute that Attorney Bryan was prosecuting the Bank's claims in issue on behalf of the Bank prior to the bankruptcy petition, and continued to do so after the petition.

■ As a general rule actual notice to a creditor's attorney of a bankruptcy filing will be sufficient notice to the creditor if the attorney received knowledge of the bankruptcy while representing his client in enforcing a claim against a bankruptcy. *In re Green,* 876 F.2d 854 (10th Cir.1989) (Chapter 7 case); *In re Alton,* 837 F.2d 457 (11th Cir.1988) (Chapter 11 case); *Ford Motor Credit Co. v. Weaver,* 680 F.2d at 457, *supra* (Chapter 11 case); *In re Van Cloostere,* 94 B.R. 131 (Bankr.S.D.Ill.1988) (Chapter 7 case involving bar date to object to dischargeability), *citing In re Price,* 79 B.R. 888 (B.A.P. 9th Cir.1987), *affirmed,* 871 F.2d 97 (1989); *In re Walker,* 91 B.R. 968 (Bankr.N.D.Utah 1988) *aff'd.* 103 B.R. 281 (D.Utah 1989); 3 Collier on Bankruptcy § 523.13(5)(c), p. 523–87–88 (15th ed. L. King). The courts have found exceptions to this Rule. *See e.g., Maldonado v. Ramirez,* 37 B.R. 219 (D.V.I.1984), *rev'd and remanded,* 757 F.2d 48 (3d Cir.1985) (notice sent to attorney on behalf of another client/creditor); *In re Fanchier,* 71 B.R. 212 (B.A.P. 9th Cir.1987) (attorney's representation of the creditor in state court proceeding does not, by virtue of that relationship alone represent the creditor with respect to the same debt in a federal bankruptcy proceeding); *In re Slaiby,* 50 B.R. 245 (Bankr.D.N.H.1985), *aff'd,* 57 B.R. 770 (D.N.H.) (Chapter 7 case) (actual knowledge to counsel for creditor sufficient to discharge judgment debt within letter and meaning of § 523(a)(3) of the Code), *citing Matter of Derrico Constr. Corp.,* 10 B.R. 553, 555 (M.D.Fla.1981) (actual notice "from whatever source" effective), and *In re Davis,* 19 B.R. 487 (S.D.Fla.1982) (oral notice sufficient); *In re Saltzmann,* 25 B.R. 125 (Bankr.E.D.Wis.1982); *In re Rider,* 89 B.R. 137 (Bankr.D.Colo.1988) (Chapter 7 case) (held unlisted creditor who has no formal knowledge of bankruptcy and no actual knowledge of bar date had debt discharged where had actual knowledge and notice of bankruptcy); *In re Fulton,* 3 B.R. 600 (Bankr.E.D.Mich.1980).

It has been held by several courts that lack of *actual* notice of the claim bar date may be sufficient to support a finding of excusable neglect so as to warrant extension of the bar date in a *Chapter 11. See, In re Dix,* 95 B.R. 134 (B.A.P. 9th Cir.1988) (Chapter 11 case; Bankr.R. 9006(b) is applicable to Bankr.R. 3003(c)(3). *In re Charter Company,* 93 B.R. 281 (Bankr.M.D.Fla. 1988) (Chapter 11 case: held "cause" under Bankr.R. 3003(c)(3) is governed by excusable neglect standard of Bankr. 9006(b) *citing, In re South Atlantic Financial Corp.,* 767 F.2d 814 (11th Cir.1985), *cert. den.,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986)); *In S.T.N. Enterprises, Inc.,* 94 B.R. 329 (Bank.Vt.1988), *rev'd* 99 B.R. 218 (D.Vt.) (Chapter 11 case; applied excusable neglect standard of Bankr.R. 9006(b) to Bankr.R. 3003(c)(3)); *See also,* the following Chapter 11 cases: *In re Valley Kitchens, Inc.,* 68 B.R. 372 (Bankr.S.D. Ohio 1986); *In re Arrow Air, Inc.,* 75 B.R. 375 (Bankr.S.D.Fla.1987); *In re Somar Concrete, Inc.,* 102 B.R. 44 (Bankr.D.Md. 1989); *compare, In re CRC Wireline, Inc.,* 103 B.R. 804 (Bankr.N.D.Tex.1989) (late claim allowed where creditor not given actual notice of bar date); *In re Pioneer, Inv. Services Co.,* 106 B.R. 510 (Bankr.E.D. Tenn.1989) (denied late claim on general equitable grounds but held that Bankr.R. 3003(c)(3) must be read in conjunction with Bankr.R. 9006(b)(1)).

However, Bankr.R. 3003(c)(3) is applicable only to Chapter 9 and 11 case and not one under Chapter 13 as in the case at bar. The applicable provision in a Chapter 13 case, as here, is Bankr.R. 3002(c).

That the Debtor failed to schedule the Bank's correct address did not relieve the Bank of its obligation to take timely action to protect its claim after it receive actual notice or actual knowledge of the case. *In re Alton,* 837 F.2d 457, ("the statutory language of [of section 523(a)(3)(B) ] ) clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claims of a creditor who took no action, whether or not that creditor received official notice from the court of the various pertinent dates); *see also, Neeley v. Murchison,* 815 F.2d 345 (5th Cir. 1987) (creditor cannot rely on blank in form or oral assertions of Bankruptcy Clerk).

There is no denial of due process here. When the Bank's attorney was notified of the bankruptcy of the Debtor, the Bank was given reasonable actual notice of the case, the actual notice was reasonably calculated under all the circumstances to appraise the Bank of the pendency of the case, and the actual notice afforded it a sufficient opportunity to act. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The Court in *In re Gregory,* 705 F.2d 1118 (9th Cir.1983) stated as follows:

When the holder of a large, unsecured claim such as Lawrence receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it."

*Id.* at 1123.

■ It is clear that the Bank was represented by Attorney Bryan prior to the bankruptcy in the enforcement of its claim or claims versus the Debtor. It is also clear that Attorney Bryan as a duly authorized attorney for the Bank in the bankruptcy proceedings relating to those same claims received actual notice of the Bankruptcy filing itself by delivery of the automatic stay by the Debtor's counsel to Attorney Bryan's secretary on January 27, 1988. *See* Attorney for Debtor's verified statement of March 6, 1988, which was not refuted by Attorney Bryan. The original address for the Bank in the Debtor's statements filed on January 27, 1988 was admittedly erroneous and thus, the original official § 341 notice of February 3, 1988 setting May 31, 1988 as the bar date for the filing of claims was not properly officially noticed to the Bank by the Clerk. However, the Debtor's Amended Statement of February 19, 1988, did set out the proper address for the Bank, and notice of the continued § 341 hearing to March 29, 1988 was properly noticed to the Bank and Attorney Bryan as evidenced by the Debtor's certificate of Service filed March 16, 1988, even though neither the Bank nor Attorney Bryan received official notice of the bar date to file claims at that time. Moreover, Attorney Bryan did actually appear at the § 341 meeting, and examined the Debtor on March 29, 1988. Thus, even though there is no record that the Bank or attorney Bryan received official notice from the Bankruptcy Clerk of the bar date prior to the May 31, 1988 bar date, the above actual notices to Attorney Bryan, as counsel for the Bank, were clearly sufficient to enable the Bank to timely file a claim.

Having decided that the Bank had sufficient actual notice of the Debtor's bankruptcy to file a timely claim the objection to the late claim must be sustained, and the exception to discharge as set out in § 523(a)(3)(A) is not applicable. Thus the *In Personam* indebtedness of the Debtor to the Bank shall be discharged pursuant to § 1328(a) upon completion by the Debtor of the terms of the confirmed plan. Section § 1327(a) governing the effect of confirmation provides that the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claims of such creditor is provided for in the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan. It should be noted that the discharge under

§ 1328(a) is only as to all debts "provided for by the plan or disallowed under § 502" with the exception of certain debts not relevant here.

The Ninth Circuit in *In re Gregory*, 705 F.2d 1118, *supra*, examined what "provided for" within the context of § 1328(a) means. The *Gregory* Court correctly held that "the phrase 'provided for' in section 1328(a) simply requires that for a claim to be dischargeable the plan must 'make provision for' it, i.e., deal with it or refer to it." *Id.* at 1122. The Ninth Circuit affirmed the Bankruptcy Appellate Panel's distinction (19 B.R. 668 at 670) between a plan which does not acknowledge an unsecured claim, and a plan which proposes to pay nothing on the claim. The critical difference is the lack of opportunity to object in a meaningful way to confirmation if the debt is not acknowledged in any manner. Such a creditor is not a part of the plan, and may assume that the plan will not affect the obligation owing to the creditor. On the other hand when a debtor proposes to pay nothing to unsecured creditors they have notice of the possible discharge of their debts and can seek denial of confirmation. *Accord: In re Daniel*, 107 B.R. 798 (N.D. Ga.1989); *In re Tomlan*, 102 B.R. 790 (E.D.Wash 1989); *In re Richards*, 50 B.R. 339 (E.D.Tenn.1985); *In re Goodwin*, 58 B.R. 75 (Bankr.D.Me.1986); *In re Hunt*, 59 B.R. 718 (Bankr.D.Me.1986); *In re Rothman*, 76 B.R. 38 (Bankr.E.D.N.Y.1987).

The Bank's underlying *in personam* claim is clearly provided for in the plan, and thus will be discharged upon completion of the confirmed plan.

However, it does not follow from any of the foregoing that any of the underlying pre-petition liens held by the Bank, which secure the debts subject to discharge, either in the nature of a consensual security interest or involuntarily imposed by a judicial lien, are voided by the Debtor's confirmed plan.

The Debtor's Amended Plan filed on June 13, 1988, which was ultimately confirmed by the Court on August 23, 1988, did not propose to treat, provide for, or void whatever prepetition liens that the Bank may have held.

Section 1322(b) sets out the contents of a plan that are permissive, *Cf.* § 1322(a) as to the mandatory components of a plan. The plan *may* modify the rights of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of unsecured claims, or leave unaffected the rights of holders of any class of claims. This right of "cram down" is not mandatory and is not self-executing. The plan pursuant to § 1322(b)(2) must affirmatively provide specific treatment that a secured claim is modified or voided, and to the extent it is so provided in the plan, a claim is deemed an allowed secured claim pursuant to § 506(a) only to the extent of the value of the collateral, and an allowed unsecured claim to the extent the amount of the claim exceeds the value of the collateral. The section 506(a) valuation applies in conjunction with any hearing on disposition or use of the collateral or on "*a plan* affecting such creditor's interest", and to the extent that a lien secured a claim is not an allowed secured claim it is void under § 506(d).

Section 506(d) thus can be employed in the permissive "cram down" provisions of a plan, or independently via an adversary proceeding instituted under Bankr.R. 7001(2) to "strip" the lien down to the value of the collateral. In either case, the debtor must affirmatively request such relief. This the Debtor did not do.

■ Here, the Amended Plan filed on June 13, 1988 makes no reference whatsoever to any lien held by the Bank, or as to whether the Bank is fully secured, unsecured or undersecured as to any such lien. The plan makes no effort whatsoever to specifically treat or modify any lien that the Bank may hold.

It is well-established that the Bankruptcy Code is not self-executing as to the *avoidance* of pre-petition liens that have affixed to the Debtor's property, and pre-petition liens versus the Debtor's pre-petition property pass through the Debtor's bankruptcy unavoided unless the Debtor takes some affirmative action to void the same, even if

no claim is filed by the lien creditor. *See In re Simmons,* 765 F.2d 547 (5th Cir. 1985); *Matter of Tarnow,* 749 F.2d 464 (7th Cir.1984); *Relihan v. The Exchange Bank,* 69 B.R. 122 (S.D.Ga.1985); *Matter of Pierce,* 29 B.R. 612 (Bankr.E.D.N.C.1983); *Matter of Cassi,* 24 B.R. 619 (Bankr.N.D. Ind.1982); *In re Andrews,* 22 B.R. 623 (Bankr.D.Del.1982); *Everidge v. American Security Corp.,* 464 N.E.2d 374 (Ind.App. 4th Dist.1984); *Wilson v. Ripley County Bank,* 462 N.E.2d 263 (Ind.App. 1st Dist. 1984); *Associates Financial Services Company of Indiana, Inc. v. Boldman,* 495 N.E.2d 203 (Ind.App. 4th Dist.1986).

Section 1325(a)(5) provides as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; ...

Section 1325(a)(5) is mandatory and the Court is only permitted to confirm a plan relating to allowed secured claims that complies therewith. The problem here is that there was no allowed secured claim on file by the Bank when the amended plan was confirmed.

The order dated August 23, 1988, confirming the Debtor's amended plan of June 13, 1988 made an express finding at paragraph 5 that § 1325(a)(5) had been complied with. This portion of the confirmation order was erroneous. In fact the Amended Plan of June 13, 1988 did not comply with § 1325(a)(5). Thus, although the Court made such a finding, the order was made based on the actual amended plan as filed.

The order could not rewrite the plan, and void a lien not provided for in the Amended Plan. Of course, to the extent that the plan provided for the underlying debt it is binding on the Bank and the Debtor.

■ A lien survives a bankruptcy proceeding unimpaired where the debtor fails to take any steps to avoid the lien or to provide for the voidance of the lien in the chapter 13 plan or by an independent adversary proceeding attacking the lien; *In re Thomas,* 883 F.2d 991 (11th Cir.1989); *In re Junes,* 99 B.R. 978 (B.A.P. 9th Cir. 1989), *citing In re Simmons,* 765 F.2d 547, and *In re Tarnow,* 749 F.2d 464, *supra. See also, Matter of Mikrut,* 79 B.R. 404 (Bankr.W.D.Wis.1987); *In re Bradshaw,* 65 B.R. 556 (Bankr.M.D.N.C.1986); *In re Harris,* 64 B.R. 717 (Bankr.D.Conn.1986); *Matter of Spohn,* 61 B.R. 264 (Bankr.W.D.Wis. 1986); *In re Hebert,* 61 B.R. 44 (Bankr.W. D.La.1986); *In re Rhoades,* 34 B.R. 168 (Bankr.D.Vt.1983); *Matter of Willey,* 24 B.R. 369 (Bankr.E.D.Mi.1982); *In re Robertson,* 4 B.R. 213 (Bankr.D.Colo.1980); *In re Honaker,* 4 B.R. 415 (Bankr.E.D.Mi. 1980); *In re Levine,* 45 B.R. 333 (N.D.Ill. 1984).

In *In re Tarnow,* 749 F.2d at 466, *supra,* the Seventh Circuit addressed the question of whether a lien can be extinguished simply because it is disallowed on the grounds it was filed late. There the Court stated:

A provision added to the Bankruptcy Code in 1978, 11 U.S.C. § 506(d) provides that "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 [regulating the allowance of claims against the bankrupt estate]." One purpose of section 506(d)(1) is simply to codify the rule of *Long v. Bullard* [117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) ]—which previously had been purely a judge-made rule of bankruptcy law—permitting liens to pass through bankruptcy unaffected. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 357 (1978), U.S.Code Cong. & Admin.News 1978, p.

5787; *see also id.* at 361; S. Rep. No. 989, 95th Cong., 2d Sess. 76 (1978); 3 Collier on Bankruptcy, *supra,* para. 506.-07, at p. 506–49.

\* \* \* \* \* \*

[w]hile Tarnow or other creditors may well have thought the Corporation's lien invalid and may have wanted the bankruptcy judge to use his powers under section 506(d) to determine that it was invalid, the judge didn't do this. The basis for disallowing the Corporation's claim was not that the Corporation was not a genuine secured creditor of the bankrupt but that its claim against the bankrupt estate—that is, its claim to be an unsecured creditor for so much of Tarnow's debt as could not be realized from the sale of the crops and equipment on which the Corporation had a lien—had been filed too late.

"[A] party in interest may seek the allowance or disallowance of the claim *and the court will then determine the validity of the lien.*" 1 Norton, *supra,* § 28.27, at p. 28–18 (emphasis added; footnote omitted). The validity of the lien was not determined in this case.

There are two further if modest supports for our interpretation. First, the Senate version of section 506(d) had provided "that to the extent a secured claim is not allowed, its lien is void unless the holder had neither actual notice nor knowledge of the case...." S. Rep. No. 598, *supra,* at 68. This could have been read to mean that the lien would be extinguished whatever the basis for disallowing the claim. But Congress enacted the House version, see 124 Cong.Rec.

33997 (1978), which is less hospitable to such a reading. Second, in 1984 Congress enacted a new section 506(d)(2), replacing the former 506(d)(1), and the new section preserves the lien if the claim "is not an allowed secured claim due only to the failure of any entity to file a proof of such claim...." Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 93–353, § 448(b), 98 Stat. 374. The change was intended "to make clear that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor." S. Rep. No. 65, 98th Cong., 1st Sess. 79 (1983). As there is still no explicit reference to the situation where a claim is filed—only late—maybe the amendment does no more than codify (or recodify) the long-established rule of the *Long v. Bullard* line of cases. But at least it deprives Tarnow of his anyway rather threadbare textual argument based on the former version of section 506(d) and on Collier's brief and unilluminating commentary on that language—provided we are allowed to look to the legislative history of an amendment to illuminate the meaning of the original statute.

\* \* \* \* \* \*

The previous statutory language really was unclear, and the amendment merely brings it into phase with the logical implications of the *Long v. Bullard* line of cases, which we know Congress meant to approve when it first enacted section 506(d) in 1978.

*Id.* at 466 (Footnotes omitted; bracketed material added by *Tarnow* Court).[2]

**2.** Section 506(d) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, July 10, 1984 ("BAFJA"). *Prior* to BAFJA, § 506(d) read as follows:

(d) To the extent that a lien secures a claim against the debtor that is not allowed secured claim, such lien is void unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title.

The Senate Report to this section as *presently* constituted as a result of BAFJA states as follows:

Paragraph (1) makes technical correcting changes. Paragraph (2) adds a new provision, the purpose of which is to make clear that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor. (S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983) (Senate Report accompanying S 445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner of the Bankr.Amend. of 1984)).

Collier on Bankruptcy in commenting on § 506(d) states as follows:

The Bankruptcy Amendments and Federal Judgeship Act of 1984 rewrote paragraphs (1)

Note 2—Continued

and (2), clarifying some of the ambiguities that had given rise to litigation thereunder. Section 506(d) provides for the avoidance of any lien securing a claim which is not allowed except under the following explicitly enumerated circumstances: if the claim was disallowed only because (a) it had not yet matured pursuant to section 502(b)(5); (b) it was a claim for reimbursement or contribution within the purview of section 502(e); or (c) no entity had filed a proof of claim with respect thereto pursuant to section 501. In all other instances, a lien securing a disallowed claim is void.

Under section 506(d), prior to its amendment in 1984, a lien could not be avoided if "a party in interest [had] not requested that the court determine and allow or disallow such claim under section 502." This provision in effect required that the lienholder be given the opportunity for its "day in court" before any action affecting the lien could be taken. If no party in interest requested allowance or disallowance of the claim, the lien would survive the bankruptcy case even if the entire personal liability of the debtor were extinguished. The amended section 506(d) incorporates the notice aspect of prior section 506(d) by providing that liens will not be avoided solely because a proof of claim has not been filed.

Thus, there are occasions when the holder of a secured claim will have grater protection with respect to its lien than with respect to the claim secured by the lien. If the holder never becomes aware of the debtor's bankruptcy case (and, in a chapter 11 case, its claim is not scheduled or is scheduled as disputed, contingent or unliquidated), its claim may nonetheless be discharged by reason of its failure to file a proof of claim. However, in order for its lien to be avoided, either the holder or another person entitled to do so must file a proof of claim with respect to the holder's claim or otherwise seek disallowance of the claim or avoidance of the lien. The holder would, of course, be entitled to "notice and a hearing" with respect to an objection to the filed proof of claim.

Section 506(d) has no precedent under the 1898 Act. Instead, it appears to be a combination of pre-code case law to the effect that liens may pass through a bankruptcy case unaffected and former Bankruptcy Rule 306(d), which provided for the determination by the court of the value of security interests held by secured claimants who file proofs of claim and the allowance of such claims only to the extent enforceable for any excess of the claim over such value. The application of section 506(d) to avoid a junior lien acquired after the effective date of the 1978 Code was found not to be a deprivation of property in violation of the Fifth Amendment, because it merely implements in a bankruptcy court the effect on a junior lien that would occur in a foreclosure sale outside of bankruptcy when the collateral is exhausted in paying the hold-er of the senior lien. The same court said its holding would not have been different if the lien had been acquired prior to the effective date of the Code.

\* \* \* \* \* \*

Other issues remain unresolved. For example, section 506(d) was changed pursuant to the 1984 amendments to make clear that a lien would survive notwithstanding the failure of the holder to file a proof of claim for the related claim. Prior to the amendment, section 506(d) required as a precondition to the avoidance of a lien thereunder a request by a party in interest that the bankruptcy court determine and allow or disallow such claim under section 502. Subsections (a) and (b) of section 502, read together, require as a prerequisite to the allowance of claim the filing of a proof of claim with respect thereto. The debtor or trustee can file a proof of claim only if the holder of the claim has not timely filed proof thereof. Consequently, notwithstanding the clarifications of the 1984 amendment with respect to lien survival, if no proof of claim is filed, issues persist as to whether the debtor or trustee can use section 506(d) to avoid a lien securing a claim for which no proof of claim has been filed and as to whether the particular actions taken by the party seeking avoidance meet the requirements of section 506(d).

Most courts do not require that a proof of claim be filed prior to lien avoidance under section 506(d). Thus, complaints or applications to determine the status of the relevant claim under section 506(a), or similarly styled pleadings, have been accepted as the requisite request under section 506(d) for allowance of disallowance. It is important to note that all pleadings so accepted provided for actual notice to the lienholder and an opportunity for a hearing. The mere scheduling of the relevant claim as unsecured is not adequate. This appears to be the better view because, among other reasons, lien avoidance under section 506(d) can occur for reasons unrelated to disallowance of the underlying claim.

A minority view does require that a proof of claim be filed prior to lien avoidance. It thus appears that in order to avert delays in promulgating chapter 11 or chapter 13 plans which must treat disputed secured claims or in selling property which is subject to disputed liens, a party in interest may be required to bring an adversary proceeding pursuant to Bankruptcy Rule 7001 "to determine the validity, priority, or extent of a lien or other interest in property" if proof of the relevant claim has not been filed (and the time to so file has not expired) rather than attempt to proceed under section 506(d).

Several additional areas of statutory interpretation with respect to section 506(d) remain unresolved. Some courts have held that section 506(d) can be used to void a lien only to the extent the underlying claim has been

Accordingly, although any *personam* liability to the Bank may be dischargeable upon completion of the confirmed plan, whatever valid prepetition liens that the Bank held to secure any such *in personam* debt will pass through this Chapter 13 case unaffected, as they have not been voided by any provision of the Debtor's amended plan. The Bank may thus proceed to enforce its lien rights versus the collateral securing any such underlying discharged debt after the Debtor's discharge.

■ The confirmation of a plan binds both the debtor and his creditors to the plan provisions. *United States of America v. Norton,* 717 F.2d 767 (3rd Cir.1983); *Matter of Gregory,* 705 F.2d 1118 (9th Cir. 1983); *In re Wickersheim,* 107 B.R. 177, 181 (Bankr.E.D.Wis.1989); *Matter of Grogg Farms, Inc.,* 91 B.R. 482, 485 (Bankr.N.D.Ind.1988); *In re Mikrut,* 79 B.R. 404, 406 (Bankr.W.D.Wis.1987); *In re Kitchen,* 64 B.R. 452, 454 (Bankr.D.Mont. 1986); *Matter of Abercrombie,* 39 B.R. 178, 179 (Bankr.N.D.Ga.1984).

Once a plan is confirmed neither a debtor nor a creditor can assert rights that are inconsistent with its provisions. *Matter of Grogg Farms, Inc.,* 91 B.R. at 485, *supra; In re Evans,* 30 B.R. 530, 531 (B.A.P. 9th Cir.1983).

■ An order of confirmation constitutes *res judicata* as to all issues that could have and should have been raised pertaining to the plan. *In re Patterson,* 107 B.R. 576, 578–79 (Bankr.E.D.Ohio 1989); *In re Wickersheim,* 107 B.R. at 181, *supra; Matter of Grogg Farms, Inc.,* 91 B.R. at 485, *supra; In re Bonanno,* 78 B.R. 52, 55 (Bankr.E.D.Pa.1987); *In re Earley,* 74 B.R. 560, 562 (Bankr.C.D.Ill.

1987); *In re Kitchen,* 64 B.R. 452, 454–55 (Bankr.D.Mont.1986); *In re Lewis,* 64 B.R. 415 (Bankr.E.D.Pa.1986) *aff'd* 85 B.R. 719 (E.D.Pa.1988); *In re Evans,* 30 B.R. 530, 531–32 (B.A.P. 9th Cir.1983); *In re Russell,* 29 B.R. 332, 335 (Bankr.E.D.N.Y.1983); *Matter of Abercrombie,* 39 B.R. 178, 179 (Bankr.N.D.Ga.1984); *In re Clark,* 38 B.R. 683, 684–85 and N. 3 (Bankr.E.D.Pa.1984; *Matter of Willey,* 24 B.R. 369, 374–75 (Bankr.E.D.Mich.1982); *Matter of Risser,* 22 B.R. 868, 870 (Bankr.S.D.Cal.1982); *Matter of Hackney,* 20 B.R. 158, 159 (Bankr.D.Idaho 1982); *In re Flick,* 14 B.R. 912, 918 (Bankr.E.D.Pa.1981); *Matter of Lewis,* 8 B.R. 132, 137 (Bankr.D.Idaho 1981).

■ Absent the showing of fraud, failure of a plan to comply with the requirements of the Bankruptcy Code as to confirmation such as found in § 1325, when there has been no timely objection to the plan, does not constitute grounds to set aside the order of confirmation. This important legal principle was discussed at some length by the court in *In re Szostek,* 886 F.2d 1405 (3rd Cir.1989). There the court stated as follows:

Under § 1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation. On the other hand is the language of § 1325(a) which provides that a court shall confirm a plan which meets the conditions listed in that section. The conflict resulted here when a confirmation order was entered for a plan which did not provide for the calculation of present value of the creditor's claim, a requirement of § 1325(a)(5)(B)(ii). Thus, we must deter-

Note 2—Continued

disallowed under section 502, but not to the extent the claim is not allowable as a secured claim under section 506(a). This reading is contrary to the express language of section 506(d) and the rationale of the better-reasoned cases.

* * * * * *

There is also a split in the case law as to whether section 1322(b)(2), which prohibits modification of the rights of the holder of a claim secured only by a security interest in the debtor's principal residence, prohibits in a chapter 13 case the application of section

506(a) and (d) to bifurcate such a claim and to void the lien to the extent the claim is not an allowed secured claim. Although several courts have held the sections to be inconsistent and, therefore, have read section 1322(b)(2) to supersede section 506(a) and (d) in the narrower instances in which section 1322(b)(2) is applicable, the better view is that the sections are not inconsistent and that section 506(a) and (d) remains applicable.

3 *Collier on Bankruptcy,* para. 506.67, pp. 566–68–76 (L. King 15th Ed.) (Footnotes omitted) (Emphasis supplied).

mine whether, in the absence of fraud, the failure of a creditor to attend the confirmation hearing, object timely to the plan, or appeal the order of confirmation, regardless of the reason, precludes the creditor from obtaining full recovery of the present value of its claim when such was not provided for in the confirmed plan.

To understand the tension between the code sections, we must first look at one of the relevant portions of the Bankruptcy Code. We find that 11 U.S.C.A. § 1327(a) provides as follows:

Effect of confirmation

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan.

11 U.S.C.A. § 1327 (West 1979). One leading commentator has recently interpreted this section as follows:

it is quite clear that the binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with sections 1322 and 1325 of the Bankruptcy Code. For example, a creditor may not after confirmation assert that the plan was not filed in good faith, ... that the creditor should have been paid interest; that the debtor is ineligible for chapter 13 relief; or that the plan is otherwise inconsistent with the Code in violation of Section 1322(b)(10) or section 1325(a)(1).

5 Collier on Bankruptcy, § 1327.01 (5th ed. 1988).

The finality of confirmed plans was discussed by the Supreme Court in *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). At issue in *Stoll* was a corporate debtor's plan which included cancellation of a guaranty to pay a bond. Prior to confirmation, there had been no objections to the plan. After confirmation, however, the creditor filed an action in state court to recover on the guaranty.

The Supreme Court held that the finality of the bankruptcy confirmation order barred the creditor from litigating its claim.

Several of our recent cases have followed this rational. For example, in *United States ex rel. I.R.S. v. Norton,* 717 F.2d 767 (3d Cir.1983), we held that the Internal Revenue Service (I.R.S.) could not retain overpayment of a debtor's taxes as security on the debt to the I.R.S. when the I.R.S. did not object to the debtor's plan, because, upon confirmation, the I.R.S. became bound by the plan's provisions. Similarly, in *In re Penn Central Transportation Company,* 771 F.2d 762 (3d Cir.1985), we held that a creditor who received notice of a railroad reorganization and failed to participate in the proceedings was barred from litigating an antitrust claim. We stated that

the purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

*In re Penn Central,* 771 F.2d at 767, *citing Duryee v. Erie R.R. Co.,* 175 F.2d 58, 61–63 (6th Cir.), *cert. denied,* 338 U.S. 861, 70 S.Ct. 103, 94 L.Ed. 527 (1949).

Other courts of appeals have upheld the binding effects of a bankruptcy confirmation order. A creditor was bound by a plan that released the third party guarantor in *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987). The court stated that, regardless of whether the plan provision to release the guaran-

tor was inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it was nonetheless included in the plan. Since the plan was confirmed without objection, nor was an appeal taken, the plan was not reviewable on its merits. 815 F.2d at 1050.

A case with facts analogous to the case here is *Neeley v. Murchison,* 815 F.2d 345 (5th Cir.1987). In *Neeley,* the creditor filed his objection to dischargeability ten days after the time limitation period. The bankruptcy court held that when the creditor's attorney erroneously relied on both oral statements by the bankruptcy court's clerks as to time limitation and the blank space on a form received from the bankruptcy clerk as to the deadline to file objections, his reliance was misplaced because the bankruptcy rules plainly stated the time deadline. The bankruptcy court found the creditor's objection time-barred. The Court of Appeals for the Fifth Circuit affirmed. 815 F.2d at 347.

Similarly, in *Matter of Gregory,* 705 F.2d 1118 (9th Cir.1983), the Court of Appeals for the Ninth Circuit held that the failure to raise an objection at the confirmation hearing, or to appeal from the confirmation order, should preclude an attack on the plan or any provision therein as being illegal in a subsequent proceeding. The court of appeals noted that the creditor's treatment seemed "grossly unfair" because of a zero-payment plan provision where the debtor, a convicted embezzler, owed $17,000 to his employer. Nonetheless, the court concluded, if a creditor ignores the bankruptcy proceedings, he does so at his peril. 705 F.2d at 1123.

*Id.* 1408–10. *See also, Goss v. Goss,* 722 F.2d 599 (10th Cir.1983) ("Consequences of a final unappealed judgment on the merits [are not] altered by the fact the judgment may have been wrong.", *quoting Federated Dept. Stores, Inc v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *In re Sanders,* 81 B.R. 496 (Bankr.W.D.Ark.1987) (confirmed plan *res judicata* so long as court is competent to preside over matters at issue, even errone-

ous determination as to extent of court's jurisdiction is *res judicata,* and not subject to collateral attack); *In re Emergency Beacon Corp.,* 84 B.R. 329 (S.D.N.Y.1988) (confirmation order not void even though erroneous; in order for order to be void court must have lacked subject matter or personal jurisdiction or must have acted without due process of law, *citing Swift and Co. v. United States,* 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928); *In re Blanton Smith Corp.,* 81 B.R. 440 (M.D.Tenn. 1987) (order confirming plan would not be set aside even if contained error of law where order was neither void nor a mistake, and there was no allegation of fraud).

The Bank has not timely appealed the confirmation order pursuant to Fed.R. Civ.P. 59 as made applicable by Bankr.R. 9023, nor has it moved to set aside the confirmation order pursuant to Fed.R. Civ.P. 60 as made applicable by Bankr.R. 9024. Neither has the Debtor.

The net effect is a final appealable confirmation order that has made erroneous findings relating to § 1325(a)(5). However, these erroneous findings cannot result in the Bank's lien being modified or voided when the Amended Plan itself upon which the confirmation order was based had no provision therein relating to the treatment of the Bank's lien or liens. Thus, the Bank's underlying lien is not modified or voided by the erroneous confirmation order. However, though erroneous it will discharge the Debtor's underlying *in personam* indebtedness to the Bank which was provided for in the Plan.

Inasmuch as the only creditor dealt with in the Plan is the Bank, and the Bank's claim has been disallowed, there are no Plan payments for the Trustee to administer.

It is possible for a plan to be confirmed with no claims being filed as long as the plan complies with the Bankruptcy Code. *See, In re Furrer,* 67 B.R. at 658, *supra, citing In re Hardy,* 56 B.R. 95 (Bankr.N.D. Ala.1985).

Accordingly, it is hereby

ORDERED, that the Debtor's objection to the Bank's claim is sustained, and said claim is denied and dischargeable. And it is further

ORDERED, that said discharge does not void any liens held by the Bank that secure the discharged debt. And it is further

ORDERED, that the Trustee file his Report of Final Account and Motion to Close this case.

The clerk shall enter this Order on a separate document pursuant to Bankr.R. 9021.